## Joyce and Murphy *against* Adams and Hawthorn.

A contract for the purchase of a quantity of cotton at a specified price per pound, deliverable thirty days from date, and payable on delivery, the buyer to pay storage, insurance, and interest after ten days, and to deposit five dollars per bale with the vendor, the cotton not having been weighed and ready for delivery, is an executory agreement, and the title remains in the vendor.

The deposit in such a case is an advance towards the price, and in case the cotton is destroyed by fire before the time of delivery, it may be recovered of the vendee.

This action was brought in the superior court of the city of New York to recover a deposit made by the plaintiff upon a contract with the defendants for the purchase of a quantity of cotton. It was tried before the late Mr. Justice Sandford, in April, 1848. The contract was made between the plaintiffs and defendants through the agency of a broker, and the following notes were passed; that to the plaintiffs was as follows:

"New York, January 27th, 1847.

Messrs. Joyce & Murphy,

Bought of Adams & Hawthorn, South st. 259 bales of cotton, viz: at $13\frac{1}{2}$.

A. P. L. 100 bales Charleston,  
S. Hunt 64 " " $\left.\begin{array}{l} \\ \\ \end{array}\right\}$ $13\frac{1}{2}$  
B. B. 95 " Mobile,

and

Buyers to pay seven cents per bale storage  
" " Insurance  
" " Interest after ten days.  
" " Deposit, five dollars per bale.

Deliverable thirty days from date. Cash on delivery

Thomas J. Stewart,

Cotton Broker."

That to the defendants was as follows:

"New York, January 27, 1847.
Sold for Messrs. Adams & Hawthorn,
　　　　　To Messrs. Joyce and Murphy, Old Slip.
259 bales cotton at 13½ c.

　　　A. P. L. 100 bales Charleston.
　　　S. Hunt  64  "　　　　"
　　　B. B.　　95  "　 Mobile.

Deliverable within thirty days. Cash on delivery. Interest on any sum unpaid after ten days. Buyers to pay seven cents per bale storage. Buyers to pay the insurance, and to deposit five dollars per bale.

　　　　　　　　　　Thomas J. Stewart,
　　　　　　　　　　　　Cotton Broker."

It appeared upon the trial that the 100 bales and 64 bales mentioned in the notes of sale were destroyed by fire before the expiration of the thirty days from the date of the notes: that the course and practice of the trade in effecting delivery of cotton is as follows: When the contract matures, an order is given by the buyer upon the seller to turn it out; it is then weighed by the seller; he employs a sworn weigher to weigh it, and must deliver it in good order; if the bales want ropes he supplies them, and if they need mending he has it done, and picks off the ragged parcels of cotton. This is done just previous to weighing it. The seller selects his own weigher, and weighs the cotton at his own expense. The bill of the price is sent to the purchaser, either on the day of the weighing or not more than one day afterwards; attached to the bill is the weigher's certificate. The bill is made according to the certificate, and states the parcels, weight and price. It was admitted that the plaintiffs, after the fire, had demanded the repayment of the deposit of five dollars upon each of the 164 bales, and that the defendants had refused to pay it. It was shown by the defendants that an insurance had been effected on the cotton, but that owing to a fall in the price

the insurance would not indemnify them for the price at which the cotton was sold by the contract, without apply-. ing a part of the deposit, and that the action was commenced before the insurance money was received. When the evidence was closed the plaintiffs' counsel requested the judge to charge,

" 1st. That the contract of the 22d January was entirely executory, being a mere agreement to sell, and that it did not change the title to the cotton.

".2d. That with regard to contracts of sale, the rule is, that where anything remains to be done by or on behalf of the vendor, to ascertain the quantity or price, or to put the goods in a deliverable state, the sale is not complete, and the property does not pass.

" 3d. That there is nothing in the present contract to take the case from the general rule of law, which throws the risk of loss upon the person in whom the property was vested at the time.

" 4th. That the defendants bound themselves to deliver the cotton at all hazards, and, having failed to do so, the plaintiffs' had a right to treat the contract as rescinded, and recover the deposit."

The judge thereupon charged the jury as follows: " That the plaintiffs' right of recovery depended on the contract given in evidence. By its terms the plaintiffs were to pay storage, interest and insurance, treating the subject as being at their expense and risk, by all the stipulations of the contract, and that the deposit was for the purpose evidently, of meeting the possible fall of price not covered by the usual fire insurance or a lien on the property, the only risk not covered by other terms of the bargain, and, therefore, the defendants were not liable to refund the deposit, so far as it was necessary to make good the price in the contract: that as the suit was commenced before the defendants were reimbursed by the insurers, the plaintiffs could not recover in this action, although, at the present time, a part of the deposit appears to be a surplus

belonging to the plaintiffs after the defendants received the insurance moneys. Exceptions were taken to the omission to charge as requested and to the charge. The jury rendered a verdict for the defendants, upon which a judgment was entered, which was affirmed at a general term in July, 1848.

The plaintiffs thereupon appealed to this court.

*G. Wood* for appellants.

*D. Lord* for respondents.

JEWETT, J. On the twenty-seventh day of January, 1847, the defendants had 259 bales of cotton in store in New York, in three parcels; one of 100 bales, and one of 64 bales, stored in the store of W. S. Moore, 296 Water street, and one of 95 bales, stored elsewhere. On that day, through the medium of a broker, the parties made a contract by which the defendants agreed to sell the plaintiffs 259 bales of cotton, 164 bales described as Charleston, and 95 bales as Mobile, at the price of thirteen and a half cents per pound, which they agreed to deliver within or at the expiration of thirty days; the plaintiffs on their part agreed to purchase the cotton mentioned at the price named, and to pay at that time the sum of five dollars per bale, towards the purchase price, and upon the delivery of the cotton to pay the balance of the price, with seven cents per bale for storage, also for the insurance thereof and interest on the price after the expiration of ten days. The plaintiffs paid the defendants at the time of making the contract, the stipulated sum of five dollars per bale, and policies of insurance were effected insuring the defendants against loss by fire in the usual form, in which it was stipulated, that the loss should be paid according to the actual cash value of the cotton at the time of the loss, in sixty days after the delivery of the proofs thereof. On the night of the 23d of February, 1847, the two parcels of 100 bales and 64 bales were

destroyed by fire in the building in which they were stored, and the loss on the 7th day of April thereafter, was paid to the defendants at the value agreed upon, being less than the price by from one cent and a half to two cents per pound.

The cotton was not weighed at the time, or after the making the contract, and remained at the time of the fire in the same situation as it did at the time of making the contract.

On the fourth or fifth March, 1847, the defendants delivered to the plaintiffs ninety-five bales of cotton for which they paid them the contract price, the storage at seven cents per bale, the insurance at sixteen cents per 100 pounds and the interest on the balance of the purchase price deducting the sum of five dollars per bale, from the sixth day of February, 1847. It was agreed between the parties that the adjustment of this parcel of cotton should not prejudice the rights of either in respect to the other parcels under their contract. On the second day of March, the plaintiffs made a formal demand on the defendants for the delivery of the other two parcels of 100 and 64 bales of cotton, and not being complied with, on the eighth of that month, demanded of the defendants a return of the five dollars per bale, which they had so advanced them at the time of making the contract, and being refused this action was brought for its recovery.

On the trial, the plaintiffs' counsel requested the judge to charge the jury as follows: 1st. That the contract of the 27th of January, was entirely executory, being a mere agreement to sell, and that it did not change the title to the cotton: 2d. That with regard to a contract of sale, the rule was that where anything remained to be done by or on behalf of the vendor, to ascertain the quantity or price, or to put the goods in a deliverable state, the sale was not complete, and the property did not pass: 3d. That there was nothing in the present contract to take the case from the general

rule of law, which threw the risk of loss on the person in whom the property was vested at the time: and, 4th. That the defendants bound themselves to deliver the cotton at all hazards, and having failed to do so, the plaintiffs had a right to treat the contract as rescinded, and recover the deposit. The judge refused so to do and charged the jury, that the plaintiffs' right of recovery depended on the contract given in evidence. By its terms the plaintiffs were to pay storage, interest and insurance, treating the subject as being at their expense and risk by all the stipulations of the contract, and that the deposit was evidently for the purpose of meeting the possible fall of price, not covered by the usual fire insurance or a lien on the property, the only risk not covered by other terms of the bargain, and therefore the defendants were not liable to refund the deposit, so far as as it was necessary to make good the price in the contract. The plaintiffs' counsel excepted to the charge and also to the omission or refusal of the judge to charge as requested.

The common law fixes the risk where the title resides; if the property did not pass to the plaintiffs by virtue of the terms of the contract at the time of making it, the risk of it did not attach to them, and the defendants having failed to deliver the cotton according to the terms of the agreement, the plaintiffs may consider it rescinded and recover back whatever they paid towards the purchase price thereof.

It is a general rule of law, that where a contract is made for the purchase of goods, and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing further remains to be done to the goods, although he can not take them away without paying the price. But if anything remains to be done on the part of the seller as between him and the buyer, such as weighing, measuring or counting out of a common parcel, before the goods purchased are to

be delivered, until that is done the right of property has not attached in the buyer; and the future risk of course remains with the seller.

In this case, the subject matter of the contract of sale, so far as it respected the number of bales and brands was identified by it, but it did not call for the cotton stored at 296 Water street. Any other bales of cotton of the description specified would as well have answered the obligation of the sellers with the buyers. And besides, the cotton was to be paid for at thirteen and a half cents per pound, and to be delivered by the sellers within or at the expiration of thirty days thereafter, when the balance of the price was to be paid. The weight had not been ascertained by the contract, and no mode was specified in which it was to be ascertained; but it was necessary that it should be before the price could be computed. It was shown that by the course and practice of the trade it was incumbent on the sellers at their own expense to have that done by a weigher; until that was done, the cotton was not even ready or in a condition for delivery. The contract, from its nature and terms, was clearly and wholly executory on the part of the sellers, leaving the title of the cotton in them, to be thereafter passed to the buyers, on the performance of certain things by them; and until these were performed, the risk of it remained with them. *Downer* v. *Thompson*, 2 *Hill*, 137; *Long on Sales*, 267; *Rapelye* v. *Mackie*, 6 *Cow.* 250; *M'Donald* v. *Hewett*, 15 *Johnson R.* 349; *Hansel* v. *Meyer*, 6 *East.* 614; *Whitehouse* v. *Frost*, 12 *East.* 614; *Zagury* v. *Funnell*, 2 *Camp.* 240; *Simmons* v. *Swift*, 5 *Barn. and Cress.* 857; 2 *Kent's Commentaries*, 495; 6 *Story's Contracts*, §§ 503, 504, 505.)

The judge at the trial charged the jury that the deposit of five dollars per bale by the plaintiffs was evidently for the purpose of meeting the possible fall of price not covered by the insurance or a lien on the property, and therefore the defendants were not liable to refund it, so far as

SEL. IV.—38.

it was necessary to make good the price of the cotton as agreed upon by the contract. In that I think the learned judge erred. In my judgment it is clear, that it was intended as an advance towards the payment of the purchase price of the property, and so it seems to have been understood by the parties; for by the bill of the 95 bales delivered, this deposit on that part was applied as so much payment of the purchase price.

The propositions which the judge was requested to charge the jury were substantially correct, and the exception to his refusal so to charge was well taken. The judgment must be reversed and a new trial ordered, with costs to abide the event.

GARDINER, TAGGART, WILLARD and MASON, JJ., concurred with Judge JEWETT

RUGGLES, Ch. J., JOHNSON and MORSE, JJ., gave no opin ion.

Judgment reversed and new trial ordered.