# N. Y. SUPERIOR COURT.

## JOHN N. KEIN, and another, agt. WILLIAM V. TUPPER, and another.

A *contract* for the sale and purcahse of one hundred and nineteen bales of cotton, to be *paid for on delivery*. does not authorize a delivery of any number less than the whole to be a performance of the condition. Such a contract is *entire* and indivisible and cannot be satisfied by a delivery or tender of delivery of a quantity *less* than the whole.

*Bought and sold notes* made in this case at the time, does not make it a complete sale so as to vest the *title* to all the cotton in the purchaser. Something remained to be done by the seller to ascertain the quantity, and by the purchaser to ascertain the quality.

To vest the title in a purchaser upon a sale unaccompanied by a delivery, nothing must remain to be done by the seller.

The evidence in this case, justified the finding of an actual delivery of seventy bales. They were taken from the warehouse, sampled and weighed, and by direction of the defendants (purchasers) *re-stored for their account.* That constituted a delivery of the seventy bales. Before a like delivery of the remainder could be made, the warehouse and its contents were destroyed by fire:

*Held,* in an action to recover the contract price of the seventy bales, that it could not be sustained (McCUNN, *J., dissenting—See his opinion.*)

*Heard at General Term, March,* 1871.

*Before* MONELL, McCUNN, and FREEDMAN, *JJ.*

THE action was to recover the contract price of seventy bales of cotton, wheighing thirty-five thousand nine hundred and thirty-eight pounds, alleged to have been sold and delivered by the plaintiffs to the defendants.

The answer denies the sale and delivery of the seventy bales, and as a separate defense alleges, that the planitiffs had contracted to sell to the defendants one hundred and nineteen bales of cotton, of certain marks, that it was sold by sample, and that such contract was the only contract between the parties. They then alleged non-performance

of said last mentioned contract by the plaintiffs, by the non-delivery of said one hundred and nineteen bales, and the readiness of the defendants to receive the same.

The action was tried by Chief Justice BARBOUR, and a jury.

The court restricted the recovery to the value of forty-two bales, holding that the value of the twenty-eight bales, partially destroyed, should be allowed to the defendants.

The jury found for the plaintiffs, for the value of the forty-two bales, and judgment was entered upon the verdict.

The defendants appealed.

R. D. BENEDICT, *for appellants defendants.*

This action was brought to recover the price of seventy bales of cotton, alleged in the complaint to have been sold and delivered by the plaintiffs to the defendants on the 15th day of July, 1868. · On the trial the following facts appeared :

On the 3d day of July, 1868, defendants agreed to buy of the plaintiffs, by sample, 119 bales of cotton, at 31¼c. per pound, through D. W. Talcott, a broker. Bought and sold notes were signed. The payment was to be " cash on delivery."

The cotton appears to have been previously contracted for by plaintiffs, with C. B. Camp & Co., and by Camp & Co., with Dibble, Worth & Co., but had never been delivered under either of those contracts. After the contract between these parties was made, Mr. Beattie, one of the defendants, asked one of the plaintiffs for new samples of the cotton, which he promised to send, and on the 15th of July, Beattie went to the broker's office and there received from Willetts, Talcott's clerk, the samples, and a card of Olmstead's warehouse, No. 508 and 510 Washington street, where Willets said the cotton was, although it was in fact in another warehouse, 502, 504 and 506 Washington street.

Beattie signed and gave to Willetts, (on condition that the order on the warehouse should be sent to him, an order on plaintiffs for the delivery of the cotton to bearer, which order was given to plaintiffs, who thereupon made out a similar order on Camp, who then gave an order on Dibble, Worth & Co., and they sent to Camp an order on the warehouse. This last order was brought to Talcotts's office, (it does not appear how,) and there Willetts wrote on the back of it, "restore for acct. Tupper & Beattie," and gave it to Talcett's sampler, Bolton, who took it up and delivered it to Olmstead. Dibble, Worth & Co., sent up Blake, the weigher, and Camp sent up another sampler, Westcott.

The warehouse began to turn out the cotton, and seventy bales of it was weighed by Blake, then sampled by Bolton, and put back in the same warehouse, with the samples. That night a fire broke out in the warehouse, which contained over 1,000 bales of cotton, and all the cotton in the warehouse was destroyed or badly injured. Twenty-eight bales were afterwards identified by the plaintiffs as being part of the seventy bales, and taken and sold by them.

On receiving the card defendants effected insurance on 119 bales of cotton in the warehouse named on the card, to be covered when delivered.

Defendants never saw the order on the warehouse, or knew that it was given, or knew anything that was done about the cotton till after the fire.

The plaintiffs have recovered a verdict for the price of 42 bales.

I. The only contract between these parties was contained in the bought and sold notes. It was not a sale, but an executory contract of sale. The judge so charged, and that is the law of the cases (*Joyce* agt. *Adams*, 8 *N. Y.*, 297.) It could not be a sale, for the plaintiffs had no cotton to sell at the time.

II. It was not a contract to sell specific bales, but to sell a given quantity. This is matter of law, and the judge erred in submitting it as a question of fact to the jury, whether the contract contemplated a particular lot.

(*a.*) The contract was in writing, in the bought and sold notes proved by the plaintiffs, and it can be no more varied or contradicted in respect to its legal effect than it can be in respect to its express terms (*Abbott's Dig.*, vol. 2, *p.* 661, § 765; *and cases cited.*)

(*b.*) As matter of law, that contract would have been fully complied with by the sellers, if they had delivered 119 bales, of those marks and corresponding with the samples shown at the time, no matter where they got them. "The subject matter of the contract of sale, so far as it respected the number of bales and brands, was identified by it, but it did not call for the cotton stored at 502, 504 & 506 Washington street. "Any other bales of cotton of the description specified would as well have answered the obligation of the sellers with the buyers" (*Joyce* agt. *Adams*, 8 *N. Y.*, 297.) It would be a most astonishing conclusion, if on such a contract, the parties were limited to specific bales.

III. If this be so, the judge erred in refusing to dismiss the complaint, and in refusing the 1st, 2d and 3d requests to charge.

(*a.*) The contract being an entire one, plaintiffs could not recover upon it without proving performance (*Russell* agt. *Nicoll*, 3 *Wend.*, 119; *Barker* agt. *Higgins*, 21 *N. Y.*, 397; *Solomon* agt. *Neidig*, 1 *Daly*, 200; *Tomkinson* agt. *Dudley*, 25 *N. Y.* 272.)

(*b.*) Even if the fire had destroyed all the cotton in New York, it would have been no excuse to them for failing to perform. But as it was, no excuse whatever was shown for failing to deliver 119 bales of cotton agreeing with the sample and the marks.

(*c.*) It is entirely clear on the facts, that no particular lot of cotton was contemplated. The description in the bought note is .

```
W X Y 112
J P O    7
      ——— 119
```
The description in the delivery order is,
```
W X Y 106
J P O    13
      ——— 119
```

Either it was not a sale of a particular lot, and the judge's charge was erroneous, or no order to deliver that particular lot was ever given, and the motion for nonsuit should have been granted.

IV.—But if we grant that it was a particular lot which was agreed to be sold, the judge was equally wrong.

(*a.*) The rule is that where something is to be done by the seller to ascertain the quantity of the article sold, the title does not pass (*Parsons on Contracts*, vol. 1, *p.* 441 *Zagury* agt. *Furnell*, 2 *Camp.*, 240; *Rugg* agt. *Minett*, 11 *East.*, 215; *Fitch* agt. *Beach*, 15 *Wend.*, 221; *Barly* agt. *Ogden*, 3 *Johns.*, 408; *Guard* agt. *Prouty*, 34

Kein agt. Tupper.

*Barb.*, 456; *Terry* agt. *Wheeler*, 25 *N. Y.*, 524). Here the cotton required to be weighed and to be sampled. The title, therefore, did not pass.

(*b* ) The weighing was a condition precedent. It could be waived by the purchaser, but unless waived it must be complied with. This weighing, which was the condition precedent, was the weighing of the article sold—the 119 bales. and unless the plaintiffs show that there was a waiver of this weighing *of the lot*, they cannot recover, and the defendants were entitled to a dismissal of the complaint.

(*c.*) The only things, which can be claimed to have been a waiver of this condition, are the acts of the sampler, Bolton, performed in consequence of instructions given him by Willetts. The only instructions, at the farthest, were to sample the cotton and re store it in the name of Tupper & Beattie. And the only evidence of any authority in the matter, from them to Willetts, is in his answer to the 8th interrogatory, in which he says he wrote the words: "re-store for account Tupper & Beattie," by direction of Beattie. There is a question as to the admissibility of this evidence: as to which, see point IX.

(*d.*) The amount of this is that Beattie directed Willetts to have the cotton re-stored for the defendant's account. This made Willetts the special agent of the defendants for that purpose, and Bolton could have no more authority than Willetts had; and if either he or Willetts exceeded their authority the defendants are not bound (*Parsons on Contracts, vol.* 1, 40), and the plaintiffs and their agents are chargeable with knowledge of those powers, as they in fact were (*Dows* agt. *Perrin*, 16 *N. Y.*, 330; *Smith* agt. *Tracy*, 36 *N. Y.*, 86). Neither Willetts nor Bolton, therefore, had any authority from defendants to do anything but re-store the lot of 119 bales. They had no authority to receive or re-store 70 bales or 42 bales (*Davenport* agt. *Buckland, Hill & Denio, Supt.*, 75; *Oliphant* agt. *Mackey*, 41 *Barb.*, 446).

(*e.*) The defendants, therefore, never having given authority to Willetts to re-store a less quantity than 119 bales, have never waived the condition precedent of the weighing of the whole lot.

(*f.*) With reference to the sampling the case is even stronger. All the considerations, which apply to the weighing, apply to it, and this additional one, that the sampling was never completed as to any bale. Sampling is composed of two acts. (1.) The taking out of the sample from the bale, and (2) the comparing of the sample with the sample by which the sale was made.

The latter act is the more important; and, as appears by the evidence, it is performed by the broker who makes the sale. "When we sample the cotton, we bring the samples down to the office, so that the broker can pass upon them." (*Bolton*).

Q. "I understood you to say that the practice of the sampler is to carry the samples back to the broker for him to pass upon the cotton."

A. "Decidedly so."

That was not done in this case. The transaction was treated by every one as an incomplete one, and the samples were put into the warehouse and were burned with the cotton.

V. The judge erred in refusing to charge, as requested in the 12th request. Assuming that this was the sale of a particular lot of cotton, and assuming the truth of Willetts' testimony, that Beattie directed him to re store the cotton for defendants account, still it is manifest that that direction was not given as to a lot of cotton in 502, 504 and 506 Washington street, but was given as to a lot in 508 and 510 Washington street. The only knowledge defendants had, as to the locality of the cotton, was the card which Willetts gave Beattie, and which Kein sent to Willetts. Beattie's evidence that Willetts gave him the card is substantially un-

contradicted. Robert Kein's statement that Beattie *said* he got it of Olmstead, does not contradict it.

The offer to prove that Robert Kein had given no such evidence on the other trial was wrongly overruled, and the exceptions in fol. 188 are good; and Beattie's evidence that Willetts told him in presence of Robert Kein that the card came from Kein, is left entirely uncontradicted. Therefore, if Beattie did direct the re-storing of any cotton, it was cotton in 508 and 510 Washington street, and no other. Willetts had no authority from Beattie as to any other. And the loss arising from this lack of authority in him, should equitably fall upon the plaintiffs, whose act in giving that card occasioned the loss of the insurance.

VI. The defendants requested the judge to charge that plaintiffs could not recover on proving a delivery of seventy bales that no title to the seventy bales passed to the defendants, unless they were delivered and accepted; and that there was no proof of acceptance. The judge refused these requests, and charged that if defendants gave authority to re-store the cotton, what was done with the seventy bales was a delivery, and the plaintiffs could recover for them. This was error. We have shown that the contract was an entire one; and the authorities are positive that to recover on such a contract the plaintiffs must prove performance (*Champlin* agt. *Rowley*, 13 *Wend.*, 258; *Mead* agt. *Dogolger*, 16 *Wend.*, 632; *Paige* agt. *Ott* 8 *Den.*, 404; *Knight* agt. *Dunlop*, 4 *Barb.*, 36.) Even the English rule does not hold that part performance may be ground for a recovery, unless it is accepted and retained.

(*a.*) But here it cannot be claimed that there was any acceptance. The most that can be claimed for the acts of the sampler, must be that they amounted to an accept-ance, conditioned upon the delivery of the remaining bales. No one could claim, if there had been no fire, and the plaintiffs had refused on the next morning to deliver the rest of the cotton, that the sampler's acts so bound the defendants that they could not return the seventy bales. We think we have shown that even this conditional acceptance of part, was beyond the authority of the sampler. An ab-solute acceptance was certainly beyond it.

(*b.*) But nothing less than an absolute acceptance of part will save a party from complete performance, even under the English cases.

(*c.*) And here instead of doing any act to make absolute this conditional accept-ance, the defendants refused to touch the cotton, and the plaintiffs actually claimed it, took it themselves, and sold it. These actions of theirs clearly bore upon the question of delivery; and the judge's refusal to charge as requested was error.

VII. The acts of the parties in the matter amounted to a rescission of the contract, and no action can be maintained, based upon it (*Parsons on Contracts, vol 2* 190.) The attempt in this case was made to avoid this rule, by alleging a sale of seventy bales made on July 15th, instead of a contract to sell one hundred and nineteen bales, made on July 3. But the contract being put in evidence must control, and the law of the case must be determined by that. On the view of the law which the court took as to the contract, the defendants were entitled to have the law charged as requested in the 19th request. If this was a sale of a particular lot, clearly the plaintiffs were bound to tender the whole lot. It is no excuse that part of it had been damaged. The plaintiffs were bound to perform as far as possible. Now, if any of the forty-nine bales could be identified, it is plain that as to them the contract could be performed. The question whether it was merchantable or not had nothing to do with it, if the sale was of a particular lot. It might have had, if it were a sale of a number of bales of a certain quality. That some of the forty-nine bales could be identified is proved by the plaintiff, John N. Kein.

VIII. The judge erred, in refusing to charge, as requested, in the 10th request. If the seventy bales had been delivered, what difference did it make to the plaintiffs whether they needed attention or not? Yet they did take possession of the twenty-eight bales, sold them, and have the money. Does not such action, on their part, throw a strong light back upon the question whether the cotton had been delivered? Yet the judge refused to charge the jury, that that fact was evidence on the question at all. The error in refusing the 11th request is even more palpable. Olmstead swore positively that plaintiff claimed the cotton as his, and identified the twenty-eight bales which plaintiffs took as part of it. But this claim is entirely inconsistent with the claim that any of it had been delivered, and the defendants were entitled to have that inconsistency put before the jury.

IX. The judge erred on several occasions upon questions of evidence. The exceptions which we desire to argue on this branch of the case are in (*folios* 22, 30, 35, 75, 83, 84, 85, 87, 111, 147, 160, 163, 164, 168, 174, 175, 176, 187, 178, 189.)

(*a.*) (*Fols.* 22, 30 *and* 189.) The answers were in no way responsive to the question, and the defendants have, therefore, had no opportunity to cross-examine the witness upon this vital point of the case. The witness should have confined himself to anything that was said and done at the time the words were written. And if the plaintiffs wanted to bring out a direction from the defendants, they should have asked for it : that the defendants be not taken by surprise.

(*b.*) (*Fol.* 35.) The plaintiffs had alleged a sale and delivery of seventy bales of cotton, on July 15. Their attention had been called to the question, for there had been a previous trial, in which it had been raised. The bought and sold notes did not tend to prove such a transaction but an entirely different one.

(*c.*) These exceptions are clearly valid. The sole ground of the claim is, that there was a delivery of the 70 bales. Surely it was evidence as to the question of delivery, to prove what the warehouse-keeper had or had not done in reference to the 70 bales. There was storage due on them, which was a lien. They could not be delivered until that was paid or released. It had not been paid, and whether it was released or not depended upon all the facts. The warehouse-man had never parted with his possession, and neither the court nor the jury could say that he had lost his lien, without knowing all the facts.

(*d.*) This evidence was clearly admissible. Bolton had stated that he had restored the 70 bales for account of defendants Yet the court refused here to allow the defendants to prove that the warehouse-keeper had no conversation about restoring for their account, or to contradict the sampler's evidence.

(*e.*) There was no evidence to connect the defendants with this exhibit, except Willett's statement, improperly admitted, and it also should have been excluded.

(*f.*) This evidence was clearly admissible (*Joyce* agt. *Adams*, 8 *N. Y.* 291; *Dalton* agt. *Daniels*, 2 *Hilt*, 472; *Sage* agt. *Gittner*, 11 *Barb.*, 120; *Dunham* agt. *Pettis*, 1 *Daly*, 117).

(*g.*) This evidence was clearly admissible to discredit Talcott.

(*h.*) This evidence was clearly admissible. It was part of the *res gestae* (*Moore* agt. *Meacham*, 10 *N. Y.* 207 ; *Godfrey* agt. *Warren*, *Hill & D. Supt.*, 32).

(*i.*) This evidence should also have been admitted. If one of the partners had no knowledge of any intended delivery, surely that fact was evidence which bore upon the question, whether any of it was accepted.

(*j.*) This evidence was clearly admissible on the question of the rescission of the contract.

(*k*) The witness had undertaken on this trial to prove that Beattie told him he got the card from Olmstead, instead of from Willetts. He was flatly contradicted

on this point by both defendants. Surely it would corroborate them to prove that on the former trial the witness, while testifying to the same conversation, had given no such evidence. Yet all evidence of what he said on the other trial was excluded.

X. The issue presented by the pleadings is, was there a sale and delivery of seventy bales of cotton on the 15th July, 1866. Upon this there can be no question. No such purchase was made by the defendants in person; nobody was authorized by them to purchase and receive for them seventy bales of cotton. If it be said that the case, as proved, presents the issue whether or not the defendants received the seventy bales in part performance by the plaintiffs of the contract of July 3d, we insist that it is equally plain that nobody was authorized by them to accept a partial and incomplete performance.

In a practical and business aspect, it is absurd to suppose that in the midst of the weighing and sampling of the entire quantity agreed to be sold, night intervening before its completion, the weighers and samplers should, on behalf of the buyer and seller, without authority, and without notice, deliver and accept a partial and incomplete performance—should re-store the part weighed at the risk and charge of the buyer—leaving the remainder at the risk and charge of the seller, piecing up and overlapping the storage accounts of buyer and seller, when the whole thing was to be completed the ensuing day . This was not intended by either party, and was not acted upon by the warehouse-man. He had not delivered a single bale, in the sense of releasing his claims to it. He had merely allowed it to be measured, so that it might be delivered when his lien was discharged. This case is one in which all the equities are with the defendants. They are by this verdict directed to pay $6.918.42, for forty-two bales of cotton. But no one will pretend for a moment that they ever intended to buy forty-two bales of cotton. It is claimed that they received seventy bales. But no one will pretend that they ever intended to receive seventy bales.

It is said that they ordered the cotton re-stored, but no one will pretend that they ever thought of any of it being or going into this building. They have been careful to attend to their own business, careful to save themselves from loss, and yet, if this verdict stands, the plaintiffs are relieved from a loss, resulting from their own carelessness—carelessness in not insuring themselves. and carelessness in mis-informing the defendants as to the locality of the cotton; and thus the burden which should be borne by the careless is placed upon the innocent shoulders of the defendants. This, we submit, is neither law nor equity. *Vigilantibus, non dormientibus, leges subveniunt.*

WM. H. ANTHON, *for respondents (plaintiffs)*

This is an appeal from a judgment entered upon a verdict in favor of the plaintiffs in this action, which was tried before Mr. Justice BARBOUR and a jury, on the 14th 15th and 16th days of June, 1870. The plaintiffs and defendants were firms, engaged in the cotton business, in the city of New York. The plaintiffs held, August 3d, 1868, one hundred and nineteen bales of cotton, of the specific marks W. X. Y., J. P. O., which they had purchased from C. B. Camp & Co., who had purchased it from Diddle, Worth & Co., and it was stored in the warehouses, 502, 506 Washington street. On the 3d day of July, 1868, this cotton was sold by D. W. Talcott & Co., cotton brokers, for account of plaintiffs to defendants, by those specific marks, at 31 1-4 cents per pound. The brokers made a sale-note, which

they delivered to plaintiffs, and a bought-note, which they delivered to defendants containing the marks, quantity, price, terms and names of buyer and seller. Messrs. Talcott & Co., acted as brokers for both parties.

The time for the delivery of the cotton was extended for accommodation of defendants, to July 15, 1868, when the defendants, by a written order, dated that day, directed the plaintiffs to deliver that cotton of the specific marks before mentioned to bearer, weighed, and in good order. The plaintiffs thereupon caused to be delivered to the defendants, Diddle, Worth & Co.'s order upon the wharehouse, 502, 506 Washington street, in favor of C. B. Camp & Co., or bearer, for the 119 bales of the specific marks aforesaid, and thereupon, the clerk of the broker endorsed upon said order by direction of J. H. Beattie, one of the defendants, the words, "re-store for account Tupper and Beattie, 114 Wall street—send storage receipt by sampler." The same day, Mr. Tupper, one of the defendants, insured 119 bales of cotton, in 508, 510 Washington street, the cotton insured was 119 bales of the specific marks of the cotton in question, but he insured it in the wrong stores, in consequence of an error in a certain card, endorsed upon which were the marks of the cotton in question.

Mr. Talcott, acting as broker for the defendants, sent his sampler, John Bolton, to sample and receive the cotton, and attend to its re-storage for defendants: he took with him the order on the storehouse, with the order for re-storage endorsed, and presented it at the storehouse, where he received 70 bales of the 119. The 70 bales were turned out in the street, and weighed, mended and sampled, they were marked W. X. Y., and agreed with the samples. On account of the lateness of the hour, the warehouse-man refused to turn out any more of the cotton, and the 70 bales were re-stored for Tupper & Beattie, the order for the delivery of the cotton, with directions for re-storage, was handed by Bolton to the warehouse-man, who, some time after the fire, took it from his safe, and handed it to plaintiff. Bolton received the cotton for Tupper & Beattie, David Westcott delivered it for Kein & Co., and Mr. Beattie gave instructions to the warehouse-keeper in reference to the cotton. The 70 bales re-stored stood upon their heads by themselves.

That same night the warehouse with its contents was burned.

The 49 bales not weighed, sampled and re-stored, were injured to such an extent by the fire, that they could not be made merchantable.

Of the 70 bales, 28 were saved in a damaged condition, which were sold at public auction, for account of the defendants, upon notice to them, and although they realized much less, defendants were credited on the trial with the full contract price of the 28 bales, with interest.

DEFENDANTS' EXCEPTIONS.—The first exception is untenable, the directions of defendants were circumstances connected with the writing of the order.

The second exception is also untenable, the bought and sold notes plainly refer to the specific lot of cotton in question, and the difficulty about the date, if material at all, is cured by the amendment of the complaint.

The third exception, viz., to the admission of plaintiffs' exhibit 4, in evidence, is also untenable, it is the delivery order for the cotton presented by defendants' agent, Bolton, at the warehouse, and upon which the cotton was delivered to the extent of 70 bales.

The fourth exception is also untenable, the pendency of a suit in reference to this cotton by parties who are strangers to this action, is immaterial.

The fifth, sixth and seventh exceptions are untenable, the questions are leading, and in view of the fact that the warehouse-man did turn the cotton out upon the delivery order, are immaterial.

Kein agt. Tupper.

The eighth exception is untenable, the practice of this particular warehouse-man is immaterial.

The ninth exception is also untenable, the question is hypothetical and irrelevant.

The tenth, eleventh and twelfth exceptions are also untenable, the written order and endorsement directing re-storage, upon which he acted, are controlling, and cannot be affected by parol testimony.

The thirteenth exception is also untenable, the conversation would not be evidence, unless the plaintiffs were present

The fourteenth exception is also untenable, plaintiffs' exhibit, No. 6, was Kein & Co.'s order on Camp, for the cotton, and is fully proven also by Mr. Robert Kein.

The fifteen exception is also untenable, the evidence is precise, that Exhibit No. 4, and the direction to re-store on the back of it were written under the direction of one of the defendants.

The sixteenth exception is also untenable, the evidence was ample to sustain plaintiff's claim.

The seventeenth exception is also untenable, the question whether the cotton in question was delivered, is a question of law, and does not depend on the custom of brokers ; the delivery was complete if nothing remained to be done by the seller.

The eighteenth exception is also untenable, it is immaterial what one of the defendants may have said to the other when plaintiffs were not present.

The nineteenth exception is also untenable, it is entirely immaterial whether the defendants knew that the cotton would be delivered that day or the next.

The twentieth exception is also untenable, it is immaterial what answer the defendants gave when the bill was presented, the plaintiffs not having presented the same in person.

The twenty-first exception is also untenable, also the twenty-second, twenty-third, twenty-fourth, these all relate to the custom of this particular warehouse-man, and whether he made any entry in his books, &c. The custom is immaterial, also whether he made an entry in his books is immaterial ; it is admitted that the cotton was re-stored, and the question for whom it was re-stored is a question of law, depending upon the written order under which the warehouse-man acted. The question as to the conversation between the warehouse-man and the party who brought the delivery order was not subsequently pressed, although the court stated that it would consider a future application in regard to the matter.

The twenty-fifth and twenty-sixth exceptions are also untenable, the oath of a party who heard the evidence at a former trial was necessary to contradict the witness.

The twenty-sixth exception is unintelligible.

EXCEPTIONS TO JUDGE'S CHARGE.—The first exception to the judge's charge seems to be taken on the ground that the plaintiffs can in no case recover for a partial delivery ; this view is clearly erroneous, and the charge of the judge was correct in this particular.

The second exception is also untenable, it was important for the jury to consider whether a specified lot of cotton was sold, because it involves the question whether the plaintiffs ought not to have satisfied their contract even after the fire, by delivering 119 bales of a certain quality.

The third exception is untenable ; there was evidence, not only "tending to show," but actually establishing the facts mentioned by the judge.

The fourth exception is also untenable ; it is of the same general nature as the third

The fifth exception is also untenable ; the rule of law, as stated by the judge, is

Kein agt. Tupper.

correct, and there·was not only evidence " tending to show," but actually to establish the facts he mentions.

The sixth exception is also untenable ; the rule of law, as laid down·by the judge, is entirely correct.

The seventh exception is untenable, and in fact, unintelligible, just the same·may be said of the eighth and ninth, in fact, the counsel for the defendants seems·to·have put in an exception at every breathing point in the judge's charge.

EXCEPTIONS UPON REFUSALS TO CHARGE.—The first exception is untenable, and to show its weakness, it is only necessary to suppose that the defendants had shipped the 70 bales, instead of re-storing them, would they not, in that case, have been bound to pay for them ?

The second, third and fourth exceptions are also untenable, the 49 bales were practically destroyed and rendered unmerchantable, and the defendants would not have been bound to take them if they had been tendered.

The fifth exception is also untenable ; the jury were instructed that they were to· find from the facts whether there was a delivery, and they did so find.

The sixth exception is also untenable, all that was required to be done by the plaintiffs had been done, and the sampler who received the cotton. on behalf of the defendants, had weighed, sampled and passed the goods on their behalf.

The seventh exception is also untenable ; the defendants had constituted Mr. Talcott, the broker, and his clerk, their agent for all purposes connected with the receiving and re-sampling of the cotton.

The eighth exception is also untenable ; the order to re-store was sufficient, even if the warehouse-man had refused to receive the cotton and had left it in the· street.

The ninth exception is also untenable ; the warehouse-man· was not the judge as to delivery, and even if he·had chosen to disregard the delivery order, it would not· have altered the position of the same.

The tenth exception is also untenable ; the evidence fully explains ·the sale of the· 29 bales for account of the defendants, and no such inference as that claimed can be. drawn from the facts.

The eleventh exception is untenable, for the same reason.

The twelfth exception is also untenable, the mistake of Mr. Beattie as to the place where the cotton was to be re-stored, is immaterial.

The thirteenth exception is also untenable ; the sampler, Bolton, had the full authority, which was conferred upon him by the delivery order and its·indorsement.

The fourteenth exception is also untenable ; it appears in the evidence *passim* that Talcott and his clerk were the agents of both parties.

The fifteenth exception is also untenable ; the judge had already practically so charged.

The sixteenth exception is also untenable ; the judge had already practically so charged.

The seventeenth exception is also·untenable, and untrue in point of fact.

The·eighteenth exception is also untenable ; the judge had charged to that effect. ·

Exception eighteen and a-half is also untenable ; the judge had charged that acceptance· must be proved, and there is evidence of such acceptance throughout the case *passim.*

The·nineteenth exception is· also untenable, the charge of the judge that if the remaining 49 bales were so damaged as to be unmerchantable, the plaintiffs were: not·bound·to· tender, nor the· defendants to receive them, is correct.

. The twentieth exception is also untenable, the plaintiffs credited defendants with the full contract price of the damaged portion of the 70 bales sold for defendant's account, although it realized far less.

The twenty-first exception is also untenable; the evidence shows that the sampler had the right to receive the cotton for the defendants, and was sent by them to the warehouse for that purpose.

The twenty second exception is also untenable; the taking of the samples to the broker's office was no part of the seller's duty, though it may have been an act of precaution on the part of the buyer, and moreover, the sampler himself passed upon the quality of the cotton.

As to the general exceptions which are not numbered.—The court was right in leaving it to the jury to determine whether the sale was of a specific lot of cotton, or only of 119 bales of a certain quality.

There was not only " evidence tending to show that one of the defendants gave instructions through the broker's office to receive the cotton," but evidence proving that fact.

The measure of damages was correct, unless, perhaps, it was somewhat hard upon the plaintiffs to charge them with the full contract price and interest of the cotton sold by them for defendants' account, to prevent its destruction, when they, in fact, received far less for it.

The general principles of law upon which the plaintiff relies to sustain the judgment are as follows :

CONTRACT OF SALE.—The broker is the agent of both parties, and as such may bind them both by signing the same contract for buyer and seller (*Chief Justice* ABBOTT—*Grant* agt. *Fletcher*, 5 *B. and C.* 436). The bought and sold notes are a sufficient memorandum of the bargain within the statute of frauds, though there was no entry in the broker's books (*Groom* agt. *Affalo*, 6 *B. and C.*, 117). But, in the present case, there was such an entry in the broker's books. A broker, who is employed by both parties, the one to sell and the other to buy, is the agent of both, and a memorandum of the terms of sale made by him in writing, and delivered to the parties, is the best evidence of the contract (*Merritt* agt. *Clason*, 12 *Johns.*, 102 : *Allan & Poillon* agt. *Aguire & Galway*, 5 *N. Y. Leg. Obs.* 380; *Com. Pl., Gen. Term*).

DELIVERY.—When no time for delivery is specified in the contract of sale, the seller has a reasonable time therefor, and it is for the jury to judge from the circumstances of the case what time is reasonable (*Terwilliger* agt. *Knapp*, 2 *E. D. Smith*, 86.) Selecting goods, and putting them one side in seller's shop for the buyer, held to be a sufficient delivery (*Brewer* agt. *Salisbury*, 9 *Barb.*, 511.) One who bought goods in a public store, took an order on the store keeper, and afterwards sold the goods by delivering the order to his vendee, who had them re-marked in his own name—held to be a sufficient delivery (*Hollignsworth* agt. *Napier*, 3 *Caines*, 182.) When, upon a sale of grain in store, in the city of New York, a measurer appointed by the board of measurers has measured the quantity, and the buyer has received an order of the store keeper for the grain, the delivery is complete (*McCready* agt. *Wright*, 5 *Duer*, 571.) When the articles are ponderous, or bulky, or cannot conveniently be delivered manually, it is enough that they are put under the absolute power of the vendee, or that his authority, as owner, is formally acknowledged, or that any act is done imparting a surrender on one side, and an acceptance on the other (1 *East.*, 192; 5 *Johns.*, 335; *Story on sales*, 311 ; 12 *Mass.*, 33; *Stanton* agt. *Small*, 3 *Sandf.*, 230; *Shindles* agt. *Houston*, 1 *N. Y.*, 261.) As long as anything remains to be done by the seller, to ascertain the value, quantity

or quality of the goods, the delivery is not complete (*Outwater* agt. *Dodge*, 7 *Cowen*, 85.) A contract for the sale of goods is complete when nothing remains to be done by the seller to ascertain the identity of the property, or its quality or quantity. (*Olyphant* agt. *Baker*, 5 *Den.*, 379; *Crofoot* agt. *Bennett*, 2 *Comst.*, 258; *Terry* agt. *Wheeler*, 25 *N. Y.*, 520.) Where property, which is the subject of a contract of sale, is destroyed by fire while the contract is in course of execution, the question upon which of the parties the loss of the property destroyed ought to fall, depends upon who had title to it at the time of its destruction. If nothing remained to be done by the seller, the loss falls upon the purchaser (*Brady* agt. *Wheeler*, 4 *Robt.* 18.) The judgment of the special term, upon the verdict of the jury, should be sustained.

*By the court*, MONELL, J.—The chief question in this case arises under the refusal of the court to charge the jury, that the contract of sale was entire, and could not be satisfied by a delivering or tender of delivering of a quantity less than the whole.

The evidence justifies the finding of an actual delivery of seventy bales. They were taken from the warehouse, sampled and weighed, and by the diriection of the defendants re-stored for their account. That constituted a delivering of the seventy bales. Before a like delivering of the remainder could be made, the warehouse and its contents were destroyed.

The bought and sold notes did not make this a complete sale, so as to vest the title to all the cotton in the defendants. Something remained to be done by the seller to ascertain the quantity, and by the purchaser to ascertain the quality. To vest the title in a purchaser upon a sale unaccompanied by a delivery, nothing must remain to be done by the seller (*Bradley* agt. *Wheeler*, 4 *Robt.*, 18, (*affirmed on appeal*, 44 *N. Y.*, 5 *Hand*, 495.) It is true, that in one case (*Croft* agt. *Bennett*, 2 *N. Y.*, 258,) it is held that mere having to weigh the commodity to ascertain the price of the whole, at the rate agreed upon where the goods are otherwise clearly identified, will not prevent it being a complete sale, but I think, the clear weight of authority is otherwise, and if anything remains to be done by the seller to ascertain its identity, quantity or quality, the title does not pass until all

this is done (*Bradley* agt. *Wheeler, supra, where the cases are* *collected.*)

The commodity in this case was divisible and capable of a separate physical delivery. Each bale could be separately weighed and sampled, and as weighed and sampled, passed over to the purchaser ; but that circumstance did not make the contract divisible, or of itself, render it capable of a separate physical performance.

The fact as found by the jury, that the sale was of a specific definite lot of cotton, and not of one hundred and nineteen bales of cotton, of a certain quality, did not release the plaintiffs from the necessity of a complete performance, as a condition precedent to a recovery, unless such a performance was rendered impossible, or was excused by what happened after the partial delivery was made.

The verdict in this case cannot, in my judgment, be sustained on the ground that the title to all of the cotton had become vested in the defendants, by the mere force of the bought and sold notes.

The sales was of one hundred and nineteen bales of cotton, of specific marks, at $31\frac{1}{4}$ cents a pound. The quantity had to be ascertained by actually weighing, and I think, it is very clear, that the weighing was to be done by, or under the direction of the plaintiff.

On this point I am unable to distinguish this case from *Joyce* agt. *Adams,* (8 *N. Y.,* 291.)

The bought and sold notes were in terms almost identical, and the cotton was, before delivery, destroyed by fire. That was held to be an incompleted sale, and the title to the cotton as remaining in the seller. And the court put its decision on the ground that it was the duty of the seller to weigh the cotton before the price could be computed, " and until that was done, the cotton was not even ready or in a condition for delivery."

It is clear, therefore, I think, that treating this as an entire

and indivisible contract, the plaintiff cannot recover upon it, as a completed sale of the whole number of bales.

And it also follows, that whether treated as a contract for the sale of a specific lot of cotton, or as merely a contract for the sale and delivery of one hundred and nineteen bales of a certain quality of cotton, in either case, a delivery of any number of bales less than the whole would not be a performance of the contract.

What is an entire, and what is a severable contract is not defined. Much depends upon the nature of the contract. Something upon the intention of the parties. Where there is a purchase of different articles, at different prices, at the same time, the contract would be several as to each article, unless the taking of the whole was rendered essential by the nature of the subject matter, or by the act of the parties. But when the purchase is of a specific commodity—or of several of a specific commodity, at a fixed price, either for the whole or for each part, and there is no intention expressed or implied of a several performance, the complete fulfilment of a condition precedent.

The contract in this case was entire and inseverable and required a full performance. It was for the sale and purchase of one hundred and nineteen bales of cotton, to be paid for on delivery, and a delivery of any number less than the whole would not be a performance of the condition.

In *Russell* agt. *Nicoll*, (3 *Wend.*, 112,) a contract for the sale of five hundred bales of cotton, cash on delivery, was held to be an entire contract, imposing no obligation on the purchaser to receive less than the whole, and in *Baker* agt. *Higgins*, (21 *N. Y.*, 397,) which was a contract for the sale of a specific quantity of brick, at a stipulated price per thousand, it was held to be an indivisible contract. In that case, there had been a part delivery, and acceptance of such part by the purchaser, and the action was to recover for such part at the stipulated price, and it was held, that the seller

could not recover without showing a delivery, or an effort to deliver the whole.

This is not a case of acceptance of a part of the goods, while in the course of accepting the whole, so as to construe it into a waiver of an exact performance of the entire contract. No such waiver can be imputed to the defendants. Their demand was for the whole, and it was no fault of theirs that the delivery was stopped.

They were ready to receive, and did no act which could be deemed a waiver of their legal right, to refuse payment for the portion delivered, until they had received the whole.

I have not regarded it as material, whether the purchase in this case was of specific and identified cotton, or generally of the number of bales of cotton mentioned in the contract. The rule as to performance is the same in either case, and the defendants had the right to require a delivery of the whole number, and the plaintiffs could have no right of action for any part without showing a delivery, or an offer to deliver, the whole number of bales mentioned in the bought and sold notes.

Nor was performance excused in this case by the happening of the fire, by which all the cotton, including the seventy bales actually delivered, was destroyed. Performance is excused when it is prevented by the act of God or of the law, but the happening of a casualty or inevitable accident or other unforeseen contingency will not.

In *Norton* agt. *Woodruff*, (2 *N. Y.*, 153,) the property was destroyed by fire before delivery, and the court held, it did not excuse performance.

And in *Joyce* agt. *Adams*, (*supra*,) after a delivery of part, the remainder was destroyed by fire. The purchaser brought his action to recover a deposit, &c., upon the contract, and the court sustained the action.

The rule on this subject is very clearly stated by Mr. Justice EDWARDS in *Havemeyer* agt. *Bingham* (12 *N. Y.*, 99, 107.)

Kein agt. Tupper.

He says, " when a party by his own contract, creates a duty or charge upon himself, he is bound to make it good; notwithstanding any accident or delay by inevitable necessity, because he might have provided against it by contract."

The meritorious question in this case is, which of the parties shall suffer the loss; one or the other must, but I cannot see any reason why the defendants should be selected.

They had no title to the whole property so as to make it their loss, nor were they responsible for any part until there was a delivery of all.

The respondent's counsel relied very much upon the case of *Bradley* agt. *Wheeler*, (*supra*,) as settling the law of the case in his favor.

But a moment's examination of this case, will show that the facts are quite different, and that decision is put on the ground that nothing remained for the seller to do, and therefore, it was a completed sale resting the title in the purchaser.

In conclusion, I am of opinion, that the defendants were entitled to have the jury instructed as they requested, and that their exceptions to the refusal was well taken.

They were also entitled to have their motion for nonsuit granted.

For these errors, the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

FREEDMAN, J. concurred.

McCUNN, *J.*—I dissent in this case. The cotton was fully in the possession of defendants; the sampler Bolton, after he had examined the cotton and found it to correspond with the samples, weighed it, and placed the same in storage for defendants at their request and by their direction; surely this is surrendering the goods to their possession.

Where an article sold is removed out of the care of the

vendor so that he cannot exercise control over it, and where it is placed under the slightest control of the purchaser, then, and in that case it is clearly at the purchaser's risk (*Brooms Com.*, 414). The cotton in the store house was actually delivered at the time the warehouse receipt and the samples were given by plaintiffs to defendants. This gave the defendants the entire command and control of the goods against all the world; and surely when they took out and unstored the seventy bales, had it examined and sampled by their own servants, and then re-stored at their own cost and risk in their own names, it will not be contended this was not a delivery of such seventy bales. Why was the balance of the property not sampled and turned over? it was not the fault of the plaintiffs, for they had turned over to defendants all evidence of title; they had surrendered all absolute control. Defendants' agent, the storekeeper, was in charge of the property; he held it by virtue of the warehouse receipt they sent him; Bolton, their sampler, had examined it, and specially re-stored it in defendants names at their (defendants) own request. Bolton and the storekeeper declined to sample any more that day : their refusal was not the act of the plaintiffs agents, but the act of defendants agent; before the balance of the cotton was examined, a fire consumed it so that it could not be examined and delivered ; surely it will not be contended that the seventy bales taken possession of by defendants and stored by them in their own name and at their risk, must not be paid for. LORD ELLEN-BOROUGH held (*2d Campbell's Nisi Prius*, 243), that the transferring of goods on a warehouseman's books was a delivery sufficient to transfer title (*see 7th Term R.*, 71; also *Wilkes and Fontain* agt. *Ferris*, 5 Johns., 335).

It is urged that it required the delivery of the whole 119 bales to complete the sale. This might have been so had not the defendants accepted and taken possession of the seventy bales, and had not the fire destroyed the balance. The taking possession of the 70 bales by defendant deprived

plaintiff of possession or the right of possession; they, (plaintiffs), could not protect themselves by insurance or otherwise, and the destruction of the thirty-nine bales, the balance, deprived them of the power to deliver it, if it had not been already delivered by the transfer of the warehouse receipt. The appropriation of a chattle by the purchaser is equivalent to a delivery. These detendants had taken the transfer of the property under their contract, they had re-stored it, they had insured it, in fact they did all that possibly could be done to possess themselves of it. This made them owners of it (1 *C and B*, 333; 5 *B and C*, 857; 2 *B and Ald.*, 753; 7 *M. & Gr.*, 882; 7 *Exch.*, 594).

Where a party has in any respect acted as owner of the goods this is a sufficient acceptance (*Broom's Com.*, 414; *Meredith* agt. *Meigh*, 2 *R. & B.*, 374; *Currie* agt. *Auderson*, *L. J. Q. B.*, 87; *Bushel* agt. *Wheeler*, 15th *Q. B.*, 442).

The order to re-store was not an order to re-store in defendant's name after the sampler had examined the cotton; but I read it, that it was an order to re-store on the warehouse receipts, the whole cotton before it was sampled, and that, the very instant the receipt was received by the warehouseman.

The case of *Joyce* agt. *Adams*, differs widely from this case. That was a conditional time contract. The cotton was to be delivered within thirty days, and it was expressly agreed, that title should remain in vendor in the meantime. Before the thirty days had expired, part of the cotton was burned, and could not be delivered; but, even in that case, part of the cotton not burned—ninety bales—had to be paid for. Now, why should not the seventy bales here delivered be paid for? It was compared with the samples and weighed, and re-stored, and re-insured in defendant's account in his warehouse. The court severed the contract in the Joyce case, although it was a whole, and held that the cotton delivered should be paid for. And, by the same line of reasoning, the court here can sever the contract, and must

hold these defendants liable for the seventy bales delivered to them. They may say these seventy bales were destroyed also; but they were destroyed when in the custody of the defendants, and when under their absolute control in their own store, where they ordered it to be put, and where they had it insured. The case of Joyce and Adams, is a case entirely in favor of the plaintiffs. The rule is settled, that where a contract is made and partly performed, and the performance of the balance is rendered impossible by unavoidable accident, the party in whose favor the part performance is made is entitled to recover for the part performed (*Gilbert* agt. *Roberts*, 19 *L. J. Exch.*, 410; *Smith* agt. *Hudson*, 8 *L. J. N. S.*, *Exch.*; *Walker* agt. *Dixon*, 9 *B. & C.*, 387; *Oxendale* agt. *Wetherel* 4 *M. & R.*, 429; 9 *B. & C.*, 386.)

In the case of *Walker* agt. *Dixon*, 2 *Stark*, 281; Lord ELLENBOROUGH held, that where a contract was made for 100 sacks of flour, (no particular flour being mentioned,) and part was delivered and defendant ready to take the ballance, plaintiff could not recover for the part delivered. But this ruling was reversed by the court in Banco, (9th B. & C., 387,) and the contrary doctrine established.

In the case of *Hind* agt. *Whitehouse*, 7 *East*, 558, 3d. *Smith*, 528,) a quantity of sugar was sold by samples, and the samples handed over, but before the sugar was weighed and delivered it was destroyed by fire.

Held, that the delivery of samples completed the sale so; in the case of *Tarling* agt. *Baxter*, (6 *B. & C.*, 360; 9 *D. & R.*, 272,) where a stack of hay was bought for £145, to be paid for and weighed afterwards. It was to stand on plaintiffs ground until paid for; in the meantime, and before it was paid for, it was destroyed by fire. Held, that there was a delivery to the defendant, and that the loss fell upon the purchaser; and so it was held in the case of *Gilmour* agt. *Supple*, 11 *More, P. C. C.*, 551.) In that case a quantity of timber in logs was sold on credit. It had

not been measured, and was being taken by, or towed to defendants boom rooms. The weather was ugly, and the defendant's men suggested, that it should be chained for the night outside the booms—this was done. A storm arose, the raft broke away and was lost. The defendant was held liable because his men took or assisted in taking the raft, and tying it to the outside of the boom ponds. It is conceded here (case at bar,) that the broker had full power to bind both parties, and the making and delivery of the sales note to each of the parties, and the entry in the books, made a perfect contract. Not only was this done, but samples were delivered to Bolton, the sampler, who received them for defendants, so that all that was left to be done in this case, was to compare the goods with the samples, and this was the work of the defendants. It was a work absolutely for their benefit, because plaintiffs had sold the cotton—119 bales, weighing so much, and marked so and so, and at the prices so and so, and "I hereby transfer warehouse receipts to you," which was done. This completed the sale, so far as it could be completed, by plaintiff, because bulky articles can only be delivered in this way. This is familiar learning.

This was all the law required of the plaintiff, and if the defendants for their own safety had this property examined and compared with the samples, it was to protect themselves with a view to the proper deductions in their favor if the goods ran short. But more than delivery of the sales, notes and warehouse receipts took place here. Beattie & Tupper, the defendants, had it re-stored in their own name. This was done by them, and in writing across the storage receipts. "Restore for account, Beattie & Tupper." Now, I hold, that the receiving of this storage receipt by Tupper & Beattie and their writing across its face, re-store in our name, and the handing of that storehouse receipt so endorsed by them (Tupper & Beattie) to the warehouse-man, was taking absolute possession and control and title of said cotton; and

that consequently, plaintiffs lost all title to it, and this before it was even weighed or sampled. Will it be doubted, that defendants could have sold the cotton ? Certainly not. Then if so, why was it not at their risk ?

Save for its effect upon the validity of the contract, with reference to the statute of frauds, the question of delivery is wholly immaterial. Title not possession determines the risk. This doctrine is now settled. This is the true rule, and the defendant's position in this case is in conflict with it. I hold, therefore, that the broker was the agent of both parties, and as such properly bound them both by signing the same contract for buyer and seller *Grant* agt. *Fletcher*, (5 *B. & C.*, 436.) I hold, that the bought and sold notes were a sufficient memorandum of the bargain, within the statute of frauds *Groom* agt. *Affalo*, (6 *B. & C.*, 117.) I hold also, that a broker who is employed by both parties, the one to sell, and the other to buy, is the agent of both, and a memorandum of the terms of the sale made by him in writing and delivered to the parties, is the best evidence of the contract *Merritt* agt. *Clason*, (12 *Johns.*, 102.) I further hold, that when the articles are ponderous or bulky, or cannot conveniently be delivered manually, it is enough, that they are put under absolute power of the vender, or that his authority as owner is formally acknowledged, or that any act is done importing a surrender on one side and an acceptance on the other (1 *East.*, 192 ; 5 *Johns.*, 335 ; *Story on Sales*, 311, 12 *Mass.*, 33 ; *Sanborn* agt. *Small*, 3 *Sandf.*, 230.) And finally I hold, that the transfer of the warehouse receipt to Beattie & Tupper and their indorsement thereon, " re-store in our name," and the receipt of that warehouse receipt by the warehouse-keeper and the re-storing of the 70 bales thereunder, conveyed the absolute title in the cotton to the defendants in this action.

The judgment should be sustained.