Hall's Safe & Lock Co. *v.* Reike.

# City Court.

*Trial Term—March,* 1886.

# HALL'S SAFE & LOCK CO. *against* WILLIAM H. REIKE.

The plaintiffs, who do business at Paducah, Kentucky, sold to the defendant a fire-proof safe No. 87, for which he agreed to pay $400 in cash and a second-hand safe then in the defendant's store at Cincinnati. The 87 safe was sent on to Cincinnati. The contract was made at the defendant's store in Cincinnati, and the delivery of the second-hand safe was to be made there. The plaintiff suffered the second-hand safe to remain in defendant's store until a fire occurred which destroyed the building and its contents, including the second-hand safe. The present action was to recover the value of said safe. *Held*, that title to the second-hand safe had passed to the plaintiffs, that the risk attends the title and not the possession, and that the defendant was not liable.

McADAM, Ch. J.—The plaintiff has a place of business at Cincinnati, Ohio, and the defendant has a place of business at Paducah, Kentucky. On or about October 1, 1883, the plaintiff sold to the defendant a fire-proof safe, No. 87, for which the latter agreed to pay $400 in cash, and, according to the allegation of the complaint, "to deliver to the plaintiff, at Paducah, Kentucky, upon the receipt by the defendant of said safe, No. 87, one second-hand safe, then in the possession of the defendant, and which the said defendant agreed to deliver to the plaintiff in good condition at Paducah aforesaid."

The plaintiff shipped safe No. 87 from Cincinnati to Paducah, Kentucky, where it was received by the defendant, who paid the $400 in cash ; but the second-hand safe, which the plaintiff was to get, remained in the defendant's possession until June 1, 1884, when it was destroyed, for all practical purposes, by a fire which took place in Paducah, and destroyed the defendant's place of business and building. The second-hand safe, it is contended, was worth $200 prior to the fire, and the question presented is, whether the loss must fall upon the plaintiff or defendant, and its determination depends upon various points which will receive consideration in order.

The contract was made by the defendant in his store at Paducah, Kentucky, where the plaintiff was represented by Mr. Spillman, as traveling salesman. It was sent to the plaintiff's branch establishment in Louisville, Kentucky, where it was approved, and the No. 87 safe came on from the plaintiff's establishment at Cincinnati. Spillman, the salesman, cannot be found, and in consequence was not produced. The plaintiff's only witness, B. Hollman, testified : "I was not present when Mr. Reike made the proposition, and not know personally anything that passed between them." The complaint, as before remarked, alleges that the defendant was to "deliver the second-hand safe at Paducah, Kentucky," and this is what the law would imply, as the safe in question was there

and the contract was made there. . The elementary writers lay it down as law, that " if no place be designated by the contract, the general rule is, that the articles sold are to be delivered at the place where they are at the time of the sale. The store of the merchant, shop of the manufacturer or mechanic, and the farm or granary of the farmer, at which the commodities sold are deposited or kept, must be the place where the demand and delivery are to be made, when the contract is to pay upon demand, and is silent as to the place."

This appears to be the general doctrine on the subject (2 *Kent Comm.* 505 ; *Hilliard on Sales*, 217, § 3 ; *Story on Sales*, 308). The second-hand safe was sold and paid for when the new safe No. 87, was delivered to the defendants. It was a consummated sale, and not a mere executory agreement to sell. Thus, in Terry *v.* Williams, 25 *N. Y.* 520, "An agreement, by the vendor of chattels, to transport them to a place named for delivery, was held not to render executory a contract of sale, otherwise completed on his part. Accordingly, where, on a sale of lumber then in the vendor's yard, the pieces sold were selected and designated, and the price paid, but the vendor agreed to deliver the lumber at a railroad station, the lumber being destroyed by fire before such delivery, it was held that the loss was that of the purchaser." The risk, it appears, attends upon the title and not upon the possession, where there is no special agreement upon the subject (Tarling *v.* Baxter, 6 *B. & C.* 360 ; Willis *v.* Willis, 6 *Dana,* 49 ; Hinde *v.* Whitehouse, 7 *East,* 558 ; Joyce *v.* Adams, 8 *N. Y.* 296, 2 *Kent Comm.* 492–496 ; *Noy's Maxims,* 88).

The correspondence between the plaintiff and defendant will be considered in order and commented on as it proceeds. The letter written by defendant, under date of January 3, 1884, says : "We have not shipped the old safe to you yet, because Mr. Flournoy, of this place, went to Louisville to try and buy it from you. If you do not

make a trade with him, let us know and we will ship it, as we have failed to find any other party who wishes the safe." The latter portion of this letter gives color to the idea, that the safe was to remain with the defendant ,on sale, for they express a desire to get rid of it on account of their inability to sell, and the fact that Mr. Flournoy wanted to purchase the safe, was given as an excuse for not shipping it before. If Spillman had been produced, and had testified that the defendant agreed to ship the safe to the plaintiff, the excuse for not shipping might be regarded as strongly corroborating his story, but it has not in itself sufficient weight to overcome the positive oath of the defendant and his witness, that no such condition was attached to the contract of sale.

The letter written by defendant, under date of February 4, 1884, is of the same tenor, and is subject to the same comment. It reads: " We have not been able to dispose of the safe you left with us. We have had several parties to look at it, but the only offer was from T. J. Flournoy, who offers $100 for it. If you don't wish to sell it at this price, please notify us where to ship it, as it is in our way." This letter also implies that the old safe was left with the defendant on sale, and that he did not know where to ship it, or in other words, that he did not know where it was to be shipped, nor to whom.

The letter written by defendant, under date of May 28, 1884, reads: " We wish you to advise us what we must do with your safe. We have no sacking, and do not know whether it would injure to ship without covering; let us know immediately where we must ship it to."

The letter written by the plaintiff to defendant, under date of December 28, 1883, reads : " P. S. If you know of no one in Paducah who will give you about $200 cash for your old safe, please ship it to us, and much oblige, etc." This gives coloring to the idea of sale in Paducah, and to the idea that there was no contract by the defendant to ship the safe, for the plaintiff does not write, " ship

Hall's Lock and Safe Co. *v* Reike.

according to contract," but "please ship and oblige," putting it on the ground of courtesy rather than as a demand of a strict contract right.   The letter written by the plaintiff to defendant, under date of May 24, 1884, reads : " Please ship old safe in your possession to us. We enclose shipping tag.   Get lowest through rate by rail, etc.   Your prompt attention will much oblige, etc." No demand as of right under contract was made, but the request was " to please ship," and " oblige, etc."

The letter written by the plaintiff to defendant, under date of May 30, 1884, is of the same general tenor as that of May 24, and does not refer to any contract obligation to ship, and concludes by giving definite shipping directions.   This letter was written on the 30th, and whether received before or after the fire, was so close to it that a reasonable time had not elapsed between the time of its receipt and the fire, to charge the defendant with neglect to ship, if he could be charged at all by a letter written long after the sale was consummated.   These letters are not inconsistent with a contract to " ship " but do not prove one.   The defendant, not having agreed, as part of the contract of sale, to ship the old safe, was under no obligation to do so.   His subsequent promise to ship was therefore gratuitous, and the excuse he furnishes is sufficient to justify a gratuitous bailee in not shipping the safe as quickly as an agent, who, by the nature of his employment, and the confidential character of his trust, must obey the lawful commands of his principal with speed and alacrity or be visited with any misfortune which may ensue in consequence.   The defendant owed no such duty ; the service he volunteered to perform was one which he might discharge at his reasonable convenience.

Upon the entire case, therefore, I find and decide that the defendant is entitled to judgment, with costs.