BENJAMIN B. TILT *et al. against* THE LA SALLE SILK MANUFACTURING COMPANY.

Defendants signed a contract in duplicate, and left both originals with plaintiffs for their signature. The contract was for the sale of goods by plaintiffs to defendants, deliverable at certain specified periods. The plaintiffs added to the contract a clause materially altering the time for delivery, and then signed it, and retained one original and sent the other to defendants, who retained it without objection, and afterwards accepted and paid for a portion of the goods contracted for, which were delivered after the time specified in the contract, as signed by defendants, but in accordance with the clause added by the plaintiffs.

*Held,* that these facts were sufficient to show an acquiesence by defendants in

the change in the contract made by plaintiffs, and to bind them to accept the remainder of the goods according to it.

Where a vendee of goods absolutely refuses to accept them according to contract, the vendor must sell them at the earliest practicable period thereafter; but where such refusal is afterwards modified, and the vendee expresses himself as being uncertain whether or not he shall accept them, the vendor is not obliged to sell at once, but may wait a reasonable time to allow the vendee to determine whether he will take them.

*Held*, in this case, that two months was not an unreasonable delay in such a case, even although the market price of the goods was falling.

APPEAL by defendants from a judgment of the general term of the Marine Court, affirming a judgment of that court entered on the decision of a judge thereof, after a trial before him, without a jury.

The action was for breach of contract for refusing to accept and pay for goods agreed to be purchased by the defendants.

The defense was that the plaintiffs had failed to tender the goods within the time called for by the contract, and that the goods tendered were of inferior quality to those agreed to be furnished.

On the trial it appeared that an agreement, of which the material parts were as follows, was drawn up in duplicate by the defendants, and left with the plaintiffs for signature :

" The La Salle Silk Manufacturing Co., of the first part, and Messrs. B. B. Tilt & Son, of the second part, have entered into a compact, in accordance with the understanding and conditions hereinafter embodied and expressed, viz. : The party of the first part agrees to purchase, and does hereby purchase of the party of the second part, three hundred kilos of strictly classical Italian organzine, size 18 to 20 deniers, in quality equal or superior to the bale of 46.85 kilos already purchased of the party of the second part, for which said party of the first part promise to pay sixteen dollars and fifty cents in gold, net cash, per pound, in ten days after receipt of each bale. It is further agreed that the party of the second part shall deliver the first bale between the 15th and 25th of August next, the second bale fifteen days after the first, and the third bale fif-

teen days after the second, and so on until the order is executed, which shall comprise three or more deliveries.

\*      \*      \*      \*      \*

"Made and signed in duplicate,
this 30th day of July, A. D. 1870.

E. A. KINGSBURY, Agent for
La Salle Silk Mfg. Co."

The plaintiffs (composing the firm of B. B. Tilt & Son) wrote underneath the contract as above given the following clause, and signed their firm name below the addition thus:

" *City of New York.*

" We approve of the foregoing contract, with the understanding that we are not to be held responsible for any delay beyond our control in delivering this organzine, and that our inability to deliver it within the time specified in this contract shall not be made a cause or pretext for refusing to accept the organzine upon its arrival by the party of the first part to these presents.

B. B. TILT & SON."

One of these duplicates, with this addition and the signature of the plaintiffs, was then taken to the defendants' office and left with them. The defendants received and retained it without objection. The other duplicate, with the same addition, was retained by the plaintiffs in their own possession. In pursuance of this contract (as the judge at the trial found), the plaintiffs delivered to, and the defendants received and paid for, three bales of organzine, the first bale being delivered to defendants on the 19th of September, 1870; the second bale on the 4th of October, 1870; and the third bale November 3d, 1870. The fourth bale was received by the plaintiffs on December 17th, 1870, and (as the judge at the trial found) conformed substantially to the " size ". or quality required by the contract. Defendants were notified thereof, but declined to receive it, claiming that there was no contract, and that it had not come within time. Subsequently, however, negotiations were had between the parties looking to an acceptance of the bale by the defendants, and the plaintiffs did not dispose of it, but retained it (as the judge found) for account of and subject

to the orders of defendants. The plaintiffs, on May 5th, 1871, notified the defendants that such bale would be held subject to the defendants' orders until May 10th, 1871, at 12 M., and at that time would (at a specified place) be sold at public auction, and the plaintiffs would look to the defendants for the difference between the amount realized at such sale and the price fixed by the contract. The defendants continuing to refuse to receive and pay for the bale, it was sold according to the notice. The proceeds of such sale were $1,016 97 less than the contract price of the bale. In order to bring the case within the jurisdiction of the Marine Court, plaintiffs waived the $16 97, and sued for $1,000 damages. The plaintiffs showed affirmatively that they had used all the means in their power to deliver the goods within the time specified for delivery, and had been unable to do so on account of the Franco-Prussian war, which was then going on in Europe. From December 17th, 1870, to May, 1871, the market price of silk was declining.

The plaintiffs had judgment for $1,000, the difference between the contract price and the proceeds of the sale on May 10th (less $16 97 waived by the plaintiffs).

*Henry H. Anderson,* for appellants.

*Samuel J. Crooks,* for respondents.

DALY, Chief Justice.—The proposed contract, signed by the defendants' agent, Kingsbury, which provided that each bale should be delivered between certain periods, was left at the plaintiffs' office, but as the war in Europe made the delivery of goods then very uncertain, the plaintiffs were unwilling to bind themselves unconditionally to deliver within the prescribed period, and a qualification of the contract was written beneath the signature of the defendant's agent, providing that the plaintiffs were not to be held responsible in delivering the organzine for any delay beyond their control; that their inability to deliver within the time specified in the contract should not be made a cause or pretext for refusing to accept the organzine upon its arrival, and that, as thus qualified, they

Tilt v. The La Salle Silk Manufacturing Co.

approved of the contract. This qualification, called by the witnesses "the appendix," was added to the duplicate copies of the proposed contract left by the defendant's agent. The plaintiff's name was signed to each copy, one of which was retained by the plaintiff, and the other was delivered by the plaintiff Albert Tilt to Mr. Simpson, the vice-president, at the office of the company, he being the chief managing officer of the defendants. Simpson admitted, when examined, that the defendants had this duplicate in their possession. He says that it was not delivered to him, but to the secretary; but admits that the secretary told him upon the day it was received, that Mr. Tilt had brought the duplicate, and left it at the defendants' office; and it does not appear that any objection was then made by him, or by any of the officers of the company, to this qualification of the proposed contract, but, on the contrary, when the first bale of the organzine arrived, which was within a day or two of the 19th of September, and after the time named in the contract as originally proposed, the defendants accepted and paid for it without objection; a circumstance fully warranting the finding of the judge that the defendants had assented to the modification made by the plaintiffs, and agreed that any inability on the part of the plaintiff to deliver within the time specified should not be made a cause or pretext for refusing to accept the organzine upon its arrival.

Of the correctness of this conclusion there cannot be any doubt upon the evidence, and I think it is equally manifest that there never would have been any question on the part of the defendants respecting this qualification of the provision about deliveries, but for the fact that about the time that the second bale was delivered the price of organzine fell in the market, and continued steadily thereafter to decline.

No one of the bales arrived within the time originally specified. The plaintiffs proved that they telegraphed to Europe for the amount required by the defendants as early as July 23d, and that their inability to deliver more rapidly than they did, grew out of the war, and was a delay over which they had no control.

Simpson, the vice-president, testified that after, or about

the time when the second bale arrived (which was on the 4th of October), and after the defendants had been notified of its arrival, he had a conversation with Albert Tilt, one of the plaintiffs, in which he told him that the company did not consider themselves holden by any contract; that he would buy as the company wanted silk, but that it should not be a precedent for the plaintiffs to claim any contract as existing and binding upon the company, and that he gave as a reason for there being no contract that the time had elapsed. Albert Tilt denied that he had ever had any such conversation with Simpson at the place and time referred to by him, or anywhere else, and, so far as the statement of Simpson was in any way material, it cannot be considered, but must be regarded as disproved, the judge having found for the plaintiffs. Whether, however, this statement was true or not, the defendants accepted and paid for this bale, and nothing further occurred until the third bale arrived, which was on the 3d of November, twenty-three days after the time originally specified. The price of silk had now materially fallen, and as there is some conflict between Simpson's and Albert Tilt's accounts of what occurred when this bale came, we must regard, under the judge's finding, Tilt's statement as the correct one. He says that Simpson came to the plaintiffs' office to see about the third bale, and claimed that there was not any contract—that the "clause," what has been heretofore referred to as the "appendix," vitiated the contract—a view of the effect of that provision which it would seem did not occur to him, or which he did not suggest to the plaintiff until this late period, four months and a half after the date of the contract, when this description of silk, organzine, had fallen in price, and he could purchase it below the contract price in the market. Tilt says that he claimed that the goods did not come in time, and that Tilt told him that it was not the plaintiffs' fault. That Simpson said that he was not obliged to take the bale; that silk was lower; that he could buy it elsewhere for less money; that he was short of money and did not want to buy it with cash; that the company had no funds; that he was not willing to advance funds for them to pay cash; that he could go elsewhere

and buy on time for less money. Tilt told him that he did not want to have any trouble about it, that the defendants ought to take the bale; that it was delivered under the contract, and that finally Simpson said that, without biasing his right to refuse the four bales, he would accept the third bale, if the plaintiff would reduce the amount to currency, with three months' interest, and take the company's note, which Tilt agreed to do. When this was finally settled, and Simpson was about leaving, he sought particularly to impress upon Tilt that, in accepting this third bale and taking it at the contract price, it should not affect the defendants' right to refuse the fourth bale, to which Tilt answered that he did not want then to discuss that; that he would discuss it when the fourth bale came; that he would be willing to submit to arbitration; that he was delivering the third bale under the contract, and, of course, did not want to talk anything about the fourth bale, as it had not arrived.

The fourth bale was received by the plaintiffs on the 17th of December. The defendants were notified of its arrival, and an invoice was sent to them, which was sent back. Tilt then called upon Simpson, who said he would not take it; that there was no contract, and that he was not obliged to take it. Tilt replied that a contract was a contract; that they had worked along under it and delivered three bales, two of which there never was any dispute about; that it was then a late. hour to raise an objection, and he offered to leave the matter to arbitration, and did everything that he could to induce him to take the bale; but he declined to do so.

The plaintiffs' course was then to sell the bale on the defendants' account, holding them responsible for the difference between the contract and the market price; but it seems that there was a negotiation between Simpson and Albert Tilt in respect to the purchase of the stock which the latter held in the company, pending which there appears to have some understanding or expectation that Simpson would take the bale; for at some time in the month of February following, after or about the time of the transfer of Tilt's stock to Simpson, he (Simpson) was asked by the plaintiff's employee, Seebass,

when he was " going to take that bale away," and Simpson said he *thought he would take it in a few days*, but he did not know. Whatever therefore may have occurred before, there was at this time an understanding on Simpson's part that he was to take this bale. He did not contradict this statement of the witness Seebass; but testified that Albert Tilt, in January or February, offered to sell the silk to him at the market price, in order to get it out of the way; but that he, Simpson, replied that he was afraid of the quality; that he did not like to buy the silk, as he had trouble in the former bales, in regard to the denier.

The bale therefore appears to have been kept from February with the understanding that Simpson was to send for it, and when the plaintiffs had kept it for what they considered a reasonable length of time, that is from February to May, they sent the defendants a notice that they had and would hold it subject to the defendants' order until the 10th of May, when they would sell it at public auction on the defendants' account, which they did, and Simpson purchased it at the auction sale, selling it afterwards to the company, at an advance upon the price he paid for it.

Upon this state of facts, the judge gave judgment for the plaintiff for the difference between the contract price and the amount which the silk brought at the auction sale.

It is insisted that this was not the correct measure of damages, and that it should have been the difference between the contract price and the market value of the article at the time when the defendants refused to receive it. This is undoubtedly the rule where the vendee absolutely refuses to receive the goods. The vendor cannot in such a case retain them upon a falling market, and when sold, hold the vendee answerable for their subsequent diminution in value. He must either sell them at once or accept as the measure of his damages the difference between the contract price and their market value at the time when the vendee refused to receive them.

This, however, was not such a case. Although Simpson refused to receive the fourth bale when notified of its arrival, it is apparent from the testimony of Seebass that the matter

had been reconsidered, and that in the month of February the plaintiffs were with his assent holding the bale subject to his order. His reply that he thought he would take it away in a few days, but he did not know, was evidence tending to show this, and sufficient to justify the conclusion that that was the understanding at that time. We cannot say, as matter of law, that the plaintiffs were not justified in holding it for two months from that time, or to express it differently, that there was under the circumstances unreasonable delay on their part, in not selling it before the expiration of that period. If Simpson, after this conversation with Seebass in February, had informed them of a final conclusion on his part not to take it, then it would have been otherwise, and it would have been incumbent upon them to sell it for the best price they could obtain at the earliest practicable period thereafter (*Pollen* v. *Le Roy*, 30 N. Y. 549). But there is nothing in the evidence to show that anything occurred between him and the plaintiffs from that time until the 4th of May, when they notified him in effect that if he did not take it before the 10th, they would sell it at auction upon his account, having allowed what they considered a reasonable time for him to determine whether he would finally take it or not.

The defendant attempted, upon the trial, to show that the silk in this bale was not of the weight or quality it purported to be, and several things were relied upon, such as that no assay paper came with the bale; but the attempts utterly failed, for Tilt swore that he made an assay of this fourth bale in the month of January, so that if Simpson "raised a dispute as to an assay paper," the plaintiffs could submit the actual assay. This was a matter with which Tilt was very familiar. He had been all his life in the silk business, and had made hundreds of such tests. He found it to be a good, and, as he testifies, an excellent average of the stuff 18–20 denier silk, which was the article contracted for.

This objection and the others were raised by Simpson after the price of the silk had fallen, and were manifestly resorted to with a view, if possible, of getting rid of an unprofitable contract. If silk, instead of falling in the market, had enhanced

in value between the time of the making of the contract and the delivery, there would not, we apprehend, have been any such questions, but the plaintiffs would have been held to the strict fulfillment of the contract. The defendants wanted the silk; for this bale after its sale by auction was obtained by them. The fact in the case is, as they could at the time of delivery buy the silk at a lower price in the market, they wanted to get rid of this onerous contract if they could.

The judgment should be affirmed.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment affirmed.