FREDERICK ALMY and Others, Respondents, *v.* MICHAELIS SIMONSON and THEODORE WEISS, Appellants.

*Auction sale — evidence of the value of the goods sold — sale within a reasonable time.*

The court will take judicial notice of the fact that a sale at auction, in the course of the mercantile affairs of a large city, is the most conformable to usage and the method best adapted to determine the market-price for which goods at the time can be sold.

In an action to recover the difference between the contract-price at which the defendants had agreed to purchase certain goods of the plaintiffs and the amount obtained therefor at auction, after a tender of the goods to the defendants, which was refused by them, and, after a notice that they would be so sold at auction, giving the time and place of such sale, and stating that the defendants would be held liable to the plaintiffs for the expenses of the sale and the deficiency arising thereon, the price received upon such auction sale is binding upon the defendants. (Brady, J., dissenting upon the ground that the sale was not made within a reasonable time.)

The question whether the sale was made within a reasonable time is to be determined by the facts and circumstances of each particular case; and where the party making the sale acts in good faith, to the best of his judgment, without any unnecessary delay, the price obtained at the sale will be accepted by the court as the actual value of the goods thus sold. (Brady, J., doubting.)

Appeal by the defendants from a judgment, entered upon the verdict of a jury rendered at the New York Circuit in favor of the plaintiffs, which judgment was entered in the office of the clerk of the county of New York on the 31st day of May, 1888, and also from an order denying the defendants' motion to set aside the verdict of the jury and for a new trial, which was entered in the said clerk's office on the same day.

*Samuel J. Crooks*, for the appellants.

*Freling H. Smith*, for the respondents.

Daniels, J. :

The verdict was recovered for the difference between the amount obtained upon a sale at auction of cloakings, contracted to be sold by the plaintiffs to the defendants, and the price for which they were to be received. For a quantity of the cloakings it was held by the court that the plaintiffs were not entitled to recover, for the

reason that the contract of sale for that quantity was within the statute of frauds. As to other quantities they were received and paid for by the defendants, but the residue, included within the contracts of sale, was refused, although they were offered and tendered to the defendants during the month of October, 1886. The bills it was agreed should be dated on the first of October of that year, although the contracts for the sales were previously made and entered into, and the indebtedness was finally to become due in sixty days from the 1st of October, 1886. After the goods, which were refused, were, in this manner, tendered to the defendants, about the middle of October, 1886, and on the second of the following month of December, the plaintiffs gave a written notice to the defendants that they would be sold at auction, at noon, on the seventh day of the month at No. 9 Greene street, in this city, at the store of Underhill & Scudder, and that the defendants would be held for the expenses and the deficiency. After this notice was served the goods were advertised in two public newspapers; and the sale took place, the defendants not being present, and giving it no attention. And at the trial it was held that the prices produced by this sale were to be accepted and acted upon by the jury as the amount, after deducting expenses, to be credited upon the purchase-price, and that the defendants were to be held liable for the residue. There is no question, neither was there any made at the trial, but that the sale was regularly made in good faith. But the court was asked to direct the jury that there was no evidence warranting the sale of the goods at public auction in the manner in which it was done and detailed in the evidence. This was declined, and the defendants excepted.

The court was also asked to direct the jury that they could not estimate the damages, if they came to the conclusion that the defendants were liable in any form, or arrive at a verdict, based upon the result of that sale. This was also declined, and the defendants excepted. That there was any irregularity whatever in the sale was not insisted upon, or suggested, by either of these requests. Neither was it suggested that the sale had not been made as expeditiously as, under the circumstances, the defendants had the right to expect it would take place. But what seems to have been intended, although it was most obscurely expressed, if, indeed, it

was expressed at all, was that the sale of the goods at auction was not binding upon the defendants, and afforded no criterion by which the amount for which the verdict might be rendered could be gauged. It is true that it was held in *Pollen* v. *Le Roy* (30 N. Y., 549), that the sale should be made according to the usages of the trade. But it was not assumed or intimated that the ordinary usages of trade for the sale of merchandise would not justify a sale at auction. The defendants themselves intimated no objection to the right to sell in that manner, or to the justice of the sale itself, in the way of ascertaining the market-value of the goods.

And in *Sands* v. *Taylor* (5 Johns., 395), on the authority of which this latter case was substantially decided, the sale was made at auction, and it was held by the court to furnish the criterion by which the amount of the verdict might legally be regulated. In *Fisher* v. *Libby* (2 Sup. Ct. [T. & C.], 672), the direct question was presented whether a sale of goods made at auction would bind the vendee as to the amount he should pay by way of damages for the non-performance of the contract of purchase, and it was decided that it would. And no authority appears to have arisen at variance with the correctness of this conclusion. The court may well take notice, as the fact is one generally known and accepted in trade, that a sale at auction in the course of the mercantile affairs of a large city will be the most conformable to usage, and the best adapted to determine the market-price for which the goods at the time could be sold. It is true that the sale to bind the vendee for the difference should be made within a reasonable time. And that was generally held to be the law in *Smith* v. *Pettee* (70 N. Y., 13), and it was so acted upon in *Hayden* v. *Demetz* (53 id., 426.) But what shall be considered a reasonable time has never been certainly fixed by the authorities. That is to be judged and ascertained by circumstances; and where the party making the sale acts in good faith and to the best of his judgment, without any unnecessary delay, the price obtained at the sale will be accepted by the court as the value of the goods then sold. (*Lewis* v. *Greider*, 51 N. Y., 251; *Dustan* v. *McAndrew*, 44 id., 72.) In the case of *Sands* v. *Taylor* a longer delay intervened than that between the tender of these goods and the time when the auction actually took place. And in *Lewis* v.

*Greider* (*supra*) the barley was sent from the interior of the State to the city of New York, and there sold after quite a long period of delay, and the sale was held to be binding and operative upon the defaulting vendee.

There was evidence upon the trial that the market for the goods had a downward tendency from about the fifteenth of November. But it was not proved that any substantial depreciation took place in their value between the middle of November, at which date the defendants were chargeable with no unreasonable delay, and the time when the sale was made. If there had been a substantial depreciation after the refusal of the defendants to receive and pay for the goods before the sale was made, that should have been definitely proved upon the trial, and upon that proof the defendants might then have raised the question whether the loss, in that manner accruing, should be borne by themselves or the plaintiffs. As the case was tried, no such question was raised. Neither were there any grounds upon which the position could be successfully taken. Beyond that, the plaintiffs appear to have acted on the supposition that they had no right to sell the goods on the responsibility of the defendants until the time for the payment of their purchase-price had expired. Whether this would have been a legal excuse for the delay before or after the middle of November, and up to the seventh of December, if the price had fallen in that time, was an objection not made at the trial nor presented by the requests to charge. If it had been, the point, as a question of fact, would, no doubt, have been submitted to the decision of the jury. As the case was disposed of, no injustice whatever has been done to the defendants. They failed to fulfill their agreement for the purchase of these goods, and refused to receive them, and became liable for whatever difference there was between the price they were to pay and the market-price at the time when the goods were offered to them. Up to that time a depreciation had taken place. Whether it increased in any sensible degree, after that and before the sale, was not proven. By the sale the extent of the liability of the defendants was exhibited, and no more than that was secured to the plaintiffs through the verdict.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

BRADY, J. (dissenting):

It appears that on the 16th of June, 1886, and on July nineteenth of the same year, the plaintiff sold to the defendants certain pieces of merchandise at prices agreed upon, which were to be delivered as called for by the defendants, and to be paid for sixty days from October 1, 1886, less five per cent. It also appeared that the entire purchase of June sixteenth was delivered and paid for, excepting twenty-seven of one lot, and of the purchase of the nineteenth of July, all were delivered excepting seventy-two pieces, which the defendants declined to receive upon the ground that they were too late for their business. On the eighteenth of October the bills for the goods not delivered were inclosed in a letter from the plaintiffs, and were dated October 1, 1886, payable at sixty days, but were returned by the defendants to the plaintiffs on the same day, accompanied by this statement in writing: "We return these bills with thanks, but cannot accept them, goods coming too late now." On the second of December, the term of credit having expired, the plaintiffs wrote defendants that unless they paid the balance due they should, at a stated time and place, sell the goods at auction for their account. No payment having been made the goods were advertised and sold at auction December 7, 1886, of which the defendants had due notice, and the amount realized on such sale was credited on their account. The defendants admitted upon the trial that the purchases of June sixteenth, and a part of the alleged purchases on July nineteenth, were made, claiming, however, that the purchases of the sixteenth of June were conditional, namely, that they were bound to pay only for those pieces for which they sent. The issues created by these conflicting statements of the transactions were submitted to the jury, who found in favor of the plaintiffs for the difference between the prices of the pieces that were absolutely sold to the defendants and the amount realized at the auction sale thereof, with interest. The amount claimed by the plaintiffs was reduced, in consequence of the ruling of the court, as to thirty pieces of merchandise ordered upon July nineteenth, for which the plaintiffs could not recover as the purchase was within the statute of frauds.

It may be said, *in limine*, that upon the dispute as to the character of the contract, in relation to the goods, whether ordered condition-

ally or otherwise, the verdict of the jury is conclusive, there being no such preponderance of evidence in favor of the defendants' version as would justify the court in disturbing the verdict. The only question of import, therefore, presented for our consideration, arises upon an exception to the charge made by the learned judge below. It appears, from the evidence given on behalf of the plaintiffs by their salesman, resulting from his redirect-examination, that the market-price for the goods, which the defendants declined to accept, had fallen off in price in the month of October, and that it was difficult to effect sales at that time; and to a question asked by the court, namely, "What was the market-price?" answered, "In the vicinity of a dollar for what we call the 'browns,' and eighty-five cents for the 'blacks.'"

The defendants, on the question of value, introduced evidence to show that the market-price of the goods in question began to decline about the fifteenth of November. That they were worth less in November than in October, and less in December than in November; that in October the market-price depended upon the demand, and that in that month there was always a demand for the goods, the season being in that month at its height; and the witness also, on that subject, stated that goods of that class, were more salable in October than in June or July. Whatever conflict this may create on the subject of the market-value in October, it appears, from the evidence of the salesman of the plaintiffs, that in October the goods had gone off in price, and although the defendants absolutely declined to accept the undelivered goods on the eighteenth of October, which were then tendered to them, the plaintiffs made no sale of them, and, so far as it appears, made no attempt to sell them until the seventh day of December at public auction, and this at a time when it would appear there was little or no demand for them.

Assuming these facts to be true, the delay of the plaintiffs in the exercise of their right to resell the merchandise was unjustifiable. Where that right is to be exercised it is incumbent upon the vendor to sell for the best price that can be obtained at the earliest practicable period. (*Tilt* v. *The La Salle Silk Mfg. Co.*, 5 Daly, 27; *Pollen* v. *Le Roy*, 30 N. Y., 549.) And this rests upon the rule stated in *Pallen* v. *Le Roy* (30 N. Y., 556), that "the difference

between the agreed price of an article and its market-value at the time of delivery is the actual damage sustained by a vendor upon the refusal by a vendee to accept the property sold, and the vendor may ascertain or liquidate this amount by a resale, taking all proper measures to secure as fair and favorable a sale as possible."

Notwithstanding these facts and this leading principle, the learned justice in the court below in charging the jury said to them : " This question about the value of the goods in October has nothing really to do with this case, except so far as to furnish a motive for the defendants in refusing to comply with this contract, if they made one, because the law gives a man the right when there is an absolute sale of goods, the law gives the vendor a right, upon tendering the goods if they are refused, to take them and sell them at auction, giving the parties notice of the time and place of sale, and upon such sale the vendee is liable for any deficiency, and that was the course adopted here. It was a perfectly legal and proper course for the plaintiffs to take if there was a contract, and the defendants become absolutely liable for the difference between the contract-price and the amount realized on the sale, to which an exception was duly taken."

It will be observed that the right to make the sale is unlimited in time by these observations, and that the value of the goods in October was disregarded, although twelve days of that month still remained after the refusal to accept the goods, and within which time they could have been sold at auction, and, when, according to the evidence, there was a demand for them and they were salable. And the effect ,also, of the charge was to assert the absolute legality of the sale at auction which took place, and the absolute liability of the defendants for the difference between the contract-price and the amount realized on the sale.

In addition to this, it may be said that the authority to sell at auction, unless evidence be given of such a custom, or of some unavailing effort to sell them at private sale and in the usual course of business, is not free from doubt. (See *Pollen* v. *Le Roy, supra*, 556, 557.) And, further, that the proposition declaring the defendants, as to value, absolutely bound by such a sale, unless there be no other evidence of value, is also questionable as a legal proposition.

The result of this consideration of this element of the case is, that the charge, under the facts and circumstances, was erroneous.

The judgment must, therefore, be reversed and a new trial ordered, with costs to appellants to abide event.

Judgment and order affirmed, with costs.