H. H. HUBBARD, Plaintiff, *v.* ROCKAWAY LUNCH COMPANY, INC., Defendant.

Supreme Court, Monroe County, December 14, 1927.

Sales — action to recover on contract under which defendant agreed to purchase quantity of eggs to be " delivered as ordered, between   *   *   * September 20th, 1925, and January 1st, 1926 "— defendant breached agreement by refusing to accept eggs in February, 1926 — plaintiff then was entitled to sue for damages forthwith — subsequent offer to deliver did not waive defendant's refusal to accept eggs — plaintiff is entitled to recover loss regardless of when breach occurred — resale in April was within reasonable time after breach — court may adjust recovery to facts — plaintiff is entitled to recover difference between price and amount received on resale.

In this action on a contract, under which defendant agreed to purchase 12,000 dozen cold storage eggs at a specified price per dozen " to be candled and delivered as ordered, between the period of September 20th, 1925, and January 1st, 1926," plaintiff seeks to recover the purchase price of the balance of undelivered eggs or damages for the wrongful refusal of defendant to accept the eggs. Upon the defendant's refusal to accept the eggs in February, 1926, there was a breach of the contract and plaintiff was entitled to sue for damages

forthwith; subsequent offers to deliver, which were not accepted, did not waive defendant's refusal to accept.

If there was any defect in proof as to the repudiation of the contract in February, it is clearly established that a tender of the eggs was made in April and that a demand was made on defendant to accept the eggs which it refused to do and that this demand was accompanied by notice.

It is not material whether the breach occurred in February or in April, as, in either event, plaintiff was entitled to recover his loss.

The resale on April fourteenth was within a reasonable time after the breach, whether it occurred February twenty-fourth or April ninth.

While plaintiff has not correctly alleged the amount of his damages, which is the difference between the sale price and the amount received on the resale, the court may adjust the recovery to the facts.

THIS action upon contract was placed on trial before the court and a jury. At the close of the plaintiff's case defendant moved to dismiss the complaint upon the ground that plaintiff had failed to prove facts sufficient to constitute a cause of action. This motion was denied and defendant excepted to the ruling. At the close of the defendant's evidence defendant renewed its motion for dismissal and each party moved for a direction of verdict in his own behalf. Thereupon both parties waived their rights to jury trial, submitted the case to the court to pass upon all questions of fact and law and decision was reserved on all motions.

*Sutherland & Dwyer* [*Eugene J. Dwyer* of counsel], for the plaintiff.

*Wile, Oviatt & Gilman* [*Andrew Gilman* of counsel], for the defendant.

RIPPEY, J. On September 18, 1925, the parties to this action entered into an agreement in writing in the following form:

" To Rockaway Lunch Co., Inc.:                    " Sept. 18, 1925.

" We, the H. H. Hubbard Butter & Egg Company, agree to contract and furnish 12,000 Dozen Cold Storage Sterilized Mixed Eggs at a price of forty-five cents ($.45) per dozen, same to be New York State Eggs, to be candled and delivered as ordered, between the period of September 20th, 1925, and January 1st, 1926.

" Any eggs remaining in storage, applicable to this contract after January 1st, 1926, will be charged for at the rate of ten cents ($.10) per case additional to the contract price of forty-five cents ($.45) per dozen.

" H. H. HUBBARD BUTTER & EGG CO.,
" By H. H. HUBBARD.

" Accepted: ROCKAWAY LUNCH Co.,
C. N. GAY."

Pursuant to the terms of the agreement, plaintiff delivered to defendant and defendant accepted from plaintiff 3,425 dozen eggs

prior to January 1, 1926, and 720 dozen eggs thereafter all of the kind and quality specified in the agreement. These were delivered in thirty dozen lots. There is no evidence as to the specific dates upon which these eggs were delivered, nor as to the manner in which the parties proceeded at or before the several times of delivery, from what particular place the eggs came nor from or at what place delivery was made.

Of the 12,000 dozen eggs contracted for, 7,855 dozen were not delivered to, nor paid for by, defendant. Defendant insists that, under the complaint as framed, plaintiff can recover, if at all, only for the price, while plaintiff claims that he may recover, if the facts warrant recovery, either for the price or for damages for wrongful refusal to accept the goods. The complaint sets up the contract, a partial delivery thereunder, a refusal to accept the undelivered balance and a right to recover the purchase price less the amount received on a resale of the goods. Testimony was admitted at the trial without objection as to when the resale was made, as to the price received and to the manner in which the resale was conducted. The making of the contract, partial delivery thereunder and defendant's refusal to accept the balance was admitted in the answer although a legal tender was denied. Plaintiff further alleged, and defendant admitted, the sending by plaintiff and receipt by defendant of a notice on March twenty-seventh, to the effect that if defendant continued to refuse receipt of the eggs plaintiff would sell the eggs as *bailee* of defendant, and of another notice on April ninth, that the eggs would be sold by plaintiff *as the agent* of defendant. There was an allegation of tender of the goods covered by the contract. It cannot be said from a reading of the complaint upon which alleged cause of action plaintiff relies if he relies upon either alone, or upon which breach of contract his cause of action for damages is predicated. Nevertheless, defendant failed to move to make the complaint more definite and certain or to separately state and number the causes of action or for a bill of particulars or to dismiss before the proofs were taken, nor did it attempt to require plaintiff to elect on which theory or which breach he claimed the right to recover, and as the complaint and the testimony now come before the court upon the trial plaintiff may recover, if the facts warrant recovery, either for the price or for damages for the breach. (*Robison & Co., Inc.,* v. *Kram, No. 2,* 195 App. Div. 878.)

Under section 144 of the Personal Property Law (added by Laws of 1911, chap. 571, as amd. by Laws of 1925, chap. 560), the seller may maintain an action against the buyer for the price in one of three cases only. Recovery is authorized in the first case where the property in the goods has passed to the buyer and the buyer wrongfully

neglects or refuses to pay for the goods according to the terms of the contract; in the second case, where the price is payable on a day certain, irrespective of delivery or of transfer of title and the buyer has wrongfully refused or neglected to pay such price even though the property in the goods has not passed and the goods have not been appropriated to the contract; in the third case, where the buyer refuses to receive the goods on the seller's offer to deliver and the seller thereafter notifies the buyer that he holds the goods as bailee for the buyer, even though the property in the goods has not passed to the buyer, provided the goods cannot be resold for a reasonable price and provided further that the seller has no cause of action for damages for a refusal to accept delivery. Obviously, plaintiff cannot recover in the second case mentioned above because the price is not, by the terms of the contract, payable on a day certain. Recovery cannot be had under the third provision of section 144 because there is no evidence that the goods could not readily be resold for a reasonable price and because a cause of action for damages accrued for non-acceptance of the goods before plaintiff notified defendant that he held the goods as defendant's bailee. (*Economu* v. *Schwartz*, 198 App. Div. 723.) Plaintiff has failed to establish that title to the goods passed to the defendant and he, therefore, cannot recover in the first case mentioned in this section.

In April or May, 1925, plaintiff placed more than 12,000 dozen New York State sterilized mixed eggs in cold storage at the Upton Cold Storage Warehouse in Rochester, N. Y., and had a sufficient quantity of these eggs in storage at that warehouse when the contract was executed and thereafter to April 14, 1926, to cover the requirements of the contract provided they were suitable for delivery.

The contract provided that plaintiff must candle the eggs as ordered for delivery. Evidence was offered by a competent witness as to the meaning of the term " candling " in the trade and when, with reference to the time of delivery, candling of cold storage eggs must be done to determine whether they are fit for delivery. It was properly received for the purpose of enabling the court to ascertain with greater certainty what was intended by the parties. (*Hinton* v. *Locke*, 5 Hill, 437.) By the candling process referred to in the contract, the plaintiff was required to examine every egg by running it across an electric light so as to determine that it contained no weak, water spots and was neither rotten nor checked and was fit for delivery and for use. In good service, according to the universal custom and practice in the trade, to be certain cold storage eggs are fit for delivery, the candling process must take place day by day as they are needed. Although the

process of candling did not change the age, size nor quality of the eggs, and neither added to nor subtracted from them, this work was necessary under the terms of the contract to identify the eggs to be delivered and to be paid for and to put the eggs when ordered in a deliverable state.

The defendant operated restaurants. It may be inferred that plaintiff knew that the eggs were to be used by defendant for food for its customers. There was an implied warranty that the eggs would be fit for consumption. (Pers. Prop. Law, § 96, subd. 1, added by Laws of 1911, chap. 571; *Race* v. *Krum,* 163 App. Div. 924; *Leahy* v. *Essex Co.,* 164 id. 903; *Standard Milling Co.* v. *de Pass,* 154 id. 525; affd., 214 N. Y. 638.) The parties, however, did not leave their intention in doubt nor leave anything on that subject to be implied. The contract did not require defendant to take and pay for untested eggs. Plaintiff was chargeable with the duty of definitely determining by candling before tender or delivery that each and every egg was fit for consumption. Until that testing was done, the eggs referred to in the contract could not be identified or selected from a larger lot, or ascertained or appropriated to the contract. The contract was thus executory and title could not pass without defendant's assent nor could defendant be chargeable with the price until plaintiff had candled the eggs which work was a condition precedent to delivery as specifically intended by the parties and required by the terms of the contract. (*McDonald* v. *Hewett,* 15 Johns. 349; *Kelley* v. *Upton,* 5 Duer, 336; *Joyce* v. *Adams,* 8 N. Y. 291; *Terry* v. *Wheeler,* 25 id. 520, 525; *Cornell* v. *Clark,* 104 id. 451; *Anderson* v. *Read,* 106 id. 333; *Lighthouse* v. *Third Nat. Bank,* 162 id. 336; Pers. Prop. Law, §§ 98, 99, 100, as added by Laws of 1911, chap. 571.)

Of the eggs contracted for, 8,575 dozen had not been ordered by defendant prior to January 1, 1926. Plaintiff was not permitted by the contract to candle these eggs before that date and thus claim that he had put them in a deliverable state and then appropriated them to the contract without the express assent of defendant and there is no evidence that defendant gave any such assent. After January first, title to the undelivered goods could not pass to defendant without its assent unless plaintiff, within a reasonable time thereafter, unconditionally appropriated eggs of the description of those covered by the contract in a deliverable state and actually delivered them to defendant at plaintiff's place of business with immediate notice of such appropriation and delivery or constructively delivered them at the cold storage warehouse.

On February 10, 1926, plaintiff sent an invoice to defendant for

8,040 dozen eggs with storage charges from January 1, 1926, to that date. It may be assumed that 535 dozen eggs had been delivered between January first and February tenth. Plaintiff claims that there was an appropriation by him of the undelivered eggs sometime between January first and February tenth, the exact date of which he does not fix. There was no evidence that the eggs in question had been identified or ascertained.

No place of delivery is fixed by the terms of the contract nor is there any evidence from which it may be found that the parties had otherwise agreed where the place of delivery should be. No usage of trade was shown by which it may be inferred where the place of delivery should be. This was not a sale of specific and ascertained goods known by defendant to be at any particular place. There is no evidence that defendant, at any time, at least before March twenty-seventh, knew or had any notice where the eggs were in storage. Under those circumstances the place of delivery was at plaintiff's place of business (Pers. Prop. Law, § 124, subd. 1) unless constructive delivery elsewhere was permissible. The invoice sent on February tenth shows plaintiff's place of business to be 162–166 Arnett boulevard, Rochester, N. Y., and plaintiff testified that his place of business was at that address, at which place he maintained a warehouse and had been in business for five years. There is no evidence that any eggs of the kind and quality specified in the contract were ever at plaintiff's place of business.

Where goods are bulky, a constructive delivery may be made at the place where the goods are stored. (*Pollen* v. *LeRoy*, 30 N. Y. 549; *Dunham* v. *Pettee*, 8 id. 508; *Wilkes* v. *Ferris*, 5 Johns. 335; *Salmon* v. *Brandmeier*, 104 App. Div. 66; *Bates* v. *Conkling*, 10 Wend. 389.) Plaintiff claims that the eggs which were to be applied to the contract were, in fact, at the cold storage warehouse of the Upton Company and in the possession of the storage company, a third party. Plaintiff could not avoid delivery at his place of business and claim a constructive delivery at the storage company's warehouse until he had identified and appropriated the goods to the contract and thereupon served notice on defendant that the goods had been so appropriated at the warehouse and until the warehouse company had given notice to defendant that it would release the goods so appropriated to defendant on plaintiff's order and until plaintiff had executed and delivered to defendant such an order. To constitute such a delivery, the goods must, at least, be placed in the power of the vendee. (*Gross* v. *Ajello*, 132 App. Div. 25.) The notices from plaintiff and the warehouse company of April ninth came too late to aid defendant on the subject of appropriation or delivery before February tenth. Plaintiff cannot claim that title

passed on April ninth, because he then was asserting the right to ·
resell.

The question remains whether plaintiff may recover damages
for defendant's wrongful refusal to accept the eggs on February
twenty-fifth.   There being no time fixed by the contract for final
delivery, defendant could be compelled to accept and pay for the
undelivered balance within a reasonable time after January first.
(*Pope* v. *Terre Haute Car & Mfg. Co.*, 107 N. Y. 61; *Eppens, Smith &
Wiemann Co.* v. *Littlejohn*, 164 id. 187.)   It was reasonable, under
all the circumstances, that plaintiff should expect defendant to accept
delivery not later than February twenty-fifth.   Plaintiff alleged and
defendant admitted that on or about February 25, 1926, plaintiff
" *requested defendant to take said eggs pursuant to the terms of said con-
tract,* but defendant wholly failed, neglected and refused to do so.''
There was no oral evidence that the eggs had been candled previous
to this request or that legal tender at the proper place of delivery had
been made.   Such evidence was unnecessary in view of defendant's
admission of a refusal to accept the undelivered balance of the eggs
covered by the contract.   This refusal to accept amounted to a repu-
diation of the contract and plaintiff was justified in treating the con-
tract as broken at that time and became entitled to sue forthwith
for damages for the breach.   (Pers. Prop. Law, §§ 132, 145, subd.
1, as added by Laws of 1911, chap. 571; *Canda* v. *Wick*, 100
N. Y. 127; *Windmuller* v. *Pope*, 107 id. 674; *Gordon Malting Co.*
v. *Bartels Brewing Co.*, 206 id. 528.)   Plaintiff made subsequent
offers to deliver which were not accepted.   The right of action which
had accrued from defendant's refusal to accept was not waived by
such subsequent refusals.   (*Canda* v. *Wick, supra.*)

Nevertheless, had there been any defect in proof which precluded
plaintiff from recovery upon defendant's repudiation of the con-
tract on February twenty-fifth, the complaint sets forth, defendant
admits, and oral testimony was offered which establishes, that on
or about April 9, 1926, plaintiff tendered to defendant the
undelivered balance of the eggs of the kind and quality covered by
the contract at the storage warehouse and at the same time delivered
to defendant an order upon the warehouse company to deliver the
eggs to defendant and a notice from such warehouse company that
it would make such delivery.   Plaintiff then requested the defend-
ant to take the eggs and it refused to do so.   At the same time
plaintiff notified defendant that he would sell the eggs as defendant's
agent at the warehouse on April fourteenth, at eleven o'clock A. M.,
in the event that defendant refused to accept the eggs as tendered.
It is not material whether the breach occurred on February twenty-
fifth, or April ninth.   In either case, plaintiff may recover his loss.

There is no evidence that there was an available market for these eggs at any time. There was no market for such a quantity of eggs of the age of the ones in question at or after February twenty-fifth. The measure of damages is the estimated loss directly and materially resulting in the ordinary course of events from the breach of the contract. (Pers. Prop. Law, § 145, subd. 2, as added by Laws of 1911, chap. 571.)

Plaintiff attempted to estimate his loss by making a resale of the goods. This is the proper method of fixing damages (*Pollen* v. *LeRoy*, 30 N. Y. 549; *Hyman* v. *Hullman*, 205 App. Div. 119; *Moore* v. *Potter*, 155 N. Y. 481; *Ackerman* v. *Rubens*, 167 id. 405) where there is no available market for the goods. The resale must be held within a reasonable time after the breach (*Bigelow* v. *Legg*, 102 N. Y. 652; *Almy* v. *Simonson*, 52 Hun, 535) and must be fairly made. (*Case* v. *Simonds*, 7 N. Y. Supp. 253; *Dustan* v. *McAndrew*, 44 N. Y. 72.) The resale was made on April 14, 1926, upon due notice to defendant, at public auction to the highest bidder. Plaintiff received upon the resale $1,178.25, or fifteen cents per dozen.

Under all the circumstances of this case it must be held that the resale was made within a reasonable time after the breach regardless of whether plaintiff claims the breach occurred on February twenty-fifth, or on April ninth, and that it was fairly and honestly made. Plaintiff patiently waited until he was compelled to act under the Farms and Markets Law (§ 238, as amd.) which required him to remove the eggs from storage within one year after he had placed them in storage. If the breach relied on is that of February twenty-fifth, plaintiff's delay in resale was due to a desire to accommodate defendant in such a way as not to impose undue hardship on it by compelling it to take the entire quantity at one time. There were deliveries in small lots subsequent to February twenty-fifth. There is no evidence of injury to defendant by any alleged delay.

Plaintiff has not correctly alleged the amount of his damages. The court has power to adjust the recovery to the facts. (*Hayes* v. *Durham*, 194 App. Div. 848; *Winter* v. *Am. Aniline Products, Inc.*, 236 N. Y. 199.) He is entitled to recover the difference between the price and the amount received on the resale.

Defendant's motions for nonsuit and for direction of verdict should be denied and plaintiff should be awarded damages of $2,356.50, with interest from April 14, 1926, making a total of $2,592.15, with costs.

So ordered.