By the Court. Vanderpoel, J.
The actions are brought on two executory contracts, the one dated on the 11th, and the other on the 17th June, 1847, each for the purchase by the defendant of fifteen hundred barrels of flour, at the rate of $8 37i per barrel, deliverable at the option of the seller, at any time, (half each month,) during the months of July and August. The actions are brought for the non-acceptance of the flour, when offered to the defendant.
By these memorandums of the defendant, a good executory contract was made by him to purchase flour at a specified price, payable on delivery, and we regard it as immaterial whether the plaintiff had an article of the kind on hand at the time of the contract, or was to procure it afterwards. Many moralists doubt the policy of permitting a party to contract for the sale *238 of goods which he does not own at the time of malting the contract, because it partakes of the nature of a gambling transaction ; but it is now well established, that a contract for the sale of goods to be delivered at a future day, is not invalidated by the circumstance, that at the time of the contract, the vendor neither has the goods in his possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them hy the time appointed for delivering them, otherwise than by purchasing them after malting the contract. (Hebblewhite v. McMorine, 5 Mees. & Wels. 462.) Alderson, Baron, there says, that if it were necessary that the vendor should own the property at the time of the contract, it would put an end to half the contracts made in the course of trade. In that case, the nisi prius decision of Ch. J. Abbott, in Bryan v. Lewis, (1 Ryan & Moody 382,) was overruled. And see Mortimer v. McCallan, 6 M. & W. 58. The legislature has seen fit to interfere and regulate stock jobbing, by providing that all contracts for the sale of shares of stock shall be void, unless the party contracting to sell or transfer the same, at the time of making such contract, shall be in the actual possession of the certificate or other evidence of such shares, or be otherwise entitled, in his own right, or be duly authorized by some person so entitled, to sell or transfer the certificate or other evidence of shares so contracted for. (1R. S. 710, § 6.) This act is peculiar, and applies only to stock jobbing operations. The lawmaking power has not yet seen fit, by similar provisions, to regulate or embarrass ordinary commercial contracts. In the absence of any legislative prohibition, I concur with Maulé, Baron, in Hebblewhite v. McMorine, that the doctrine laid down in Bryan v. Lewis is against all law, and against all commercial convenience. The contracts were, therefine, valid executory contracts, which the defendant was bound to fulfil, if the plaintiff performed all that devolved upon him by way of condition precedent. As the case stands, was the defendant excused from accepting the flour?
It is alleged that no sufficient delivery or tender was made of that flour. First. As to the fifteen hundred barrels to be delivered in July. It must be borne in mind, that the action is not *239 for goods sold and delivered, nor for goods bargained and sold, where the full price is sought to be recovered; but on the special contract, for not taking and paying for the flour. From the evidence of Cowing, it appears that while the plaintiff evinced an entire willingness to deliver, the defendant showed a decided unwillingness to receive. His studious attempt not to commit himself, his want of frankness in not specifying objections to his receiving the flour, all showed a design, if possible, to get rid of his contracts. After the plaintiff tendered the flour on piers No. 4, 5, and 6, the defendant barely remarked, that “ he did not think it such flour as the contract called for,” or something to that effect. No objection was made by him as to the character of the tender or offer to deliver. He saw fit to repose upon a single objection; that is, the quality or kind of the article. If not satisfied with the place at which, or the manner in which, the delivery was made, or offered to be made, he ought to have stated his objection to these particulars. He omitted to do so, but took another objection, which turns out not to have been well taken. This objection, however, to the quality or kind was applied only'to the floiu at pier No. 6, on board of the barge “ Iowa.” As to the first two lots, he did not object that the description of the flour was not according to the contract-; but remarked, “ Oh, where is the rest of it 2” All this time he was perfectly silent as to the insufficiency of the delivery.
Considering the ponderous character of the article, we think here was a sufficient delivery or offer to deliver. At all events, enough to impose upon the defendant the obligation of saying where he wanted to have it delivered. But the character of the tender or delivery did not then seem to trouble him. He merely felt, or affected to feel, some concern about the quality or kind of the flour; but even his objections in this respect, he would not condescend to particularize. It was not incumbent on the plaintiff, especially when the defendant was so taciturn and mysterious, to roll out every barrel on the dock, or cart it to the defendant’s store or place of business. His whole conduct showed an unwillingness to receive and pay the contract price, and neither is the law, nor the custom of dealers in the article, so unreasonable as to require that the plaintiff should have gone through the expensive *240 ceremony, unasked by the defendant, of rolling out the flour on the dock, or carrying it to his store. Where goods are ponderous or bulky, or cannot conveniently be delivered manually, the law does not require an actual delivery thereof, but only that they should be put under the absolute power of the vendor, or that Ms authority as owner should be formally acknowledged; or that some act should be done, typical of a surrender of them on the one side, and of an acceptance of them on the other. (Story on Sales, § 301.) Thus, the delivery of the bey of the warehouse containing the goods sold, or the bill of lading of goods at sea; or of the receipt, ticket, sale note, dock warrant certificate, bill of parcels, or other usual type and evidence of title to goods, will, in most cases, be a sufficient constructive delivery of them to pass the title. (Chaplin v. Rogers, 1 East 3 R. 192; Wilkes v. Ferris, 5 John. 335; Story on Sales, § 311.) The law only requires such a delivery as is consistent with the nature and situation of the thing sold. When the articles are ponderous and bulky, a different rule prevails from what would be applicable to articles easily capable of manual transfer. In Jewett v. Warren, 12 Mass. 300, the vendor, on the sale of certain logs , lying witMn a basin, took the vendee in sight of them, and showed them to him; it was held to be a sufficient delivery, on the ground that no other delivery was practicable under the circumstances, and that this act was intended as a delivery of the logs.
We have thus far considered the case independently of any usage proved, or attempted to be proved, in reference to this article. We think, considering the ponderous nature of the article, that the defendant only urged the inferiority of the flour to the contract standard, and that he showed anything but a willingness to receive it; the tender of the fifteen hundred barrels deliverable in July was sufficient for the purposes of tMs action. The plaintiff, in law, and according to good morals, did enough to place the defendant in the wrong. The plaintiff showed a desire to fulfil, the defendant the opposite sentiment. The frankness and apparent anxiety of the plaintiff to deliver to the defendant the property according to the contract, were met by a most significant spirit of non-committalism, a spirit showing a design not to fulfil his contract, but by sldlM manoeuvre to *241 escape, if possible, its unpalatable consequences. The law is not so unreasonable as to require from the vendor more than the plaintiff here did or offered to do, nor is it so blind as not to see that more pains and ceremony on his part would not have changed the manifest predetermination of the defendant, not to accept of the flour. The delivery was in our view sufficient, without reference to the question of usage.
But the usage testified to, surely fortifies the plaintiff’s case. In Pleasants v. Pendleton, 4 Rand. 474, it was held that an established usage constitutes the common understanding of parties, and ought to be resorted to as the interpretation of the contract; and that an usage that flour in a store is sold by order, and passes by the transfer of the order from hand to hand, without actual delivery of the flour, is a reasonable usage, and ought to be enforced as part of the contract. There, too, the court received and sanctioned evidence as to cooperage, as to where and at whose expense it was done. Cabell, Justice, says that the usage of trade there proved, for flour in store to be sold by mere draft or order on the warehouse-man, and to pass through many hands before it is called for, is entitled to great consideration; that the usages of trade are presumed to enter into the contemplation of the parties to a contract, and that they are supposed to contract on their basis. See also as to usage, Bourne and others v. Gatliffe, 7 Man. & Grang. 851. According to the usage as testified, to by Cowing, Dows & Wolfe, the plaintiff placed himself in a right position. According to this testimony, particularly that of Cowing, it is the usage in the sale and transfer of flour in large quantities, for the seller to deliver to the buyer his orders, or the orders of some other person, on the barge or store where it may be. The buyer receives these orders, and then usually goes and looks at the flour. If it agree with the purchase, he takes it, and if not, he reports to the seller. If the flour is in barges, the practice is to cooper it at the time it is delivered to the cart. The usage proved, as to coopering, inspecting, and separating a smaller from a larger lot, favors and fortifies the plaintiff’s case.
As to the fifteen hundred barrels, deliverable in August, the plaintiff’s case is, if possible, stronger than the one proved in *242 respect to the July delivery. As to the August delivery, the defendant said he did not think the plaintiff had complied in delivering, according to contract; that he did not think he was bound to take flour in the hold of a vessel, or in the fourth story of a building. Plaintiff said he would turn the flour out on the walk, or cart it to his door, or to any other part of the city he would name, provided Tie would say Tie would falte if. Defendant remarked, plaintiff “ could do as he pleased.” He did not tell him where to cart it to, nor whether he would take it. It seems to have been impossible to satisfy the defendant. We • think the plaintiff is entitled to recover in each suit the difference between the contract price and the market price at the time of,, the offer, with interest.
Judgment for the plaintiff.