(18 App. Div. 151.)

### DURYEA v. BONNELL.

(Supreme Court, Appellate Division, Second Department.   May 21, 1897.)

1. SALES—ACTION FOR PRICE—TENDER BY SELLER.
   Defendant bought a lot of flour from plaintiff.   Plaintiff did not own any flour, but his course of dealing, which was known to defendant, was to order the flour from a mill, and have it shipped directly to defendant in the quantities required.   Plaintiff requested defendant several times to take the flour, but he refused.   During the whole time plaintiff was able to deliver the flour.   *Held*, that a tender of the flour by plaintiff was not essential to the maintenance of an action for breach of the contract to purchase, since a delivery was prevented by defendant.

2. SAME—ESTOPPEL.
   Defendant in an action for breach of his contract of purchase is estopped to deny that plaintiff was not able to deliver the goods, where a delivery was prevented by defendant.

Appeal from judgment on report of referee.

Action by Charles H. Duryea against Thomas J. Bonnell to recover damages alleged to have been sustained by plaintiff's assignors in consequence of the alleged refusal of defendant to receive a quantity of flour purchased by him.   The complaint was dismissed on the merits, and plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

L. B. Bunnell, for appellant.

C. E. Cuddeback, for respondent. .

HATCH, J.   The contract between the defendant and Duryea, Watts & Co. constituted a binding agreement for the sale and delivery of the flour ordered by the defendant of the firm in April and October, 1892.   Stanton v. Small, 3 Sandf. 230; Benj. Sales, p. 86. The referee found that, in the usual course of business between the said firm and the defendant, the firm would book the order of the defendant, and, as the defendant requested, would order from the mill, of which the firm were agents, the required quantity of flour, which would be shipped directly from the mill to the defendant.   The firm owned no flour, except as they purchased of the mill to fill the orders which they received from customers.   This condition was known to the defendant, as well as was the whole course of dealing.   The defendant used about 600 barrels of flour monthly in his business, and, while no specific time was agreed upon when the flour should be delivered in pursuance of the order given by the defendant, yet, in the usual course of business, it would be within one or two months after the order was booked.   It is not disputed but that during the whole time after the defendant gave the order for the flour in April and October, 1892, while the firm remained the agents of the mill, the firm was at all times in a position where it could order out from the mill the flour required to fill the defendant's order, upon the defendant's request therefor.   This condition continued to exist up to March, 1893, after the orders were given.   The referee finds that, of the April purchase, 375 barrels were delivered upon request of the defendant, and of the October purchase, in like manner, 450 barrels

were delivered. It is also established by the proof that at this time the firm was able, ready, and willing to deliver the whole amount of flour called for by the order, but that, upon request of the defendant, delivery of the whole number of barrels was not then made. It also appears, and the referee found, that the firm often thereafter requested the defendant to order out the flour remaining of these orders, but that the defendant did not do so. The proof is abundant, and without contradiction, to show that the firm was calling upon the defendant to take the flour in accordance with his contract; that the defendant recognized his obligation to take the flour, but neglected and refused compliance with the demand of the firm to order it out. It is also established that it was within the power of the firm to obtain the flour from the mill during all this time. The only reason why it was not so ordered out rested upon the defendant, in not requesting it in pursuance of the terms of his contract. The referee placed his decision in dismissing the complaint upon two grounds: First, that no sufficient tender of the undelivered flour was ever made by the firm, so as to place the defendant in default under his contract, and that the omission of the defendant to order out the flour was not a waiver of the tender, whereby a tender was rendered unnecessary; second, "that the failure of the company to designate or set apart any specified lot of flour as being that which should have been taken by defendant under his contract is a bar to recovery." So far as the conclusion of law found by the referee upon the subject of waiver of tender by the defendant is concerned, the facts upon which it is based are undisputed. It is without dispute that he did not order out the flour in accordance with the terms of his contract, that he requested a delay in delivery, and that he refused to order out the flour upon demand so to do. The effect of his attitude in this respect therefore becomes a question of law. In Nelson v. Elevating Co., 55 N. Y. 480, it was said by Judge Allen:

"An actual tender of performance may be excused when there is a willingness and an ability to perform, and actual performance has been prevented or expressly waived by the parties to whom performance is due."

In that case the contract required the plaintiff to furnish for elevation and storage in the defendant's elevator 500,000 bushels of grain, which the defendant agreed to receive, elevate, and store for a specific sum. The breach alleged was that the defendant refused to receive and store the grain under the contract. The plaintiff was defeated upon the ground that the complaint failed to aver that the plaintiff, or any other person, had grain for delivery to the defendant, to be elevated and stored, or that the plaintiff was ready or willing or could have furnished or delivered grain to the defendant under the contract; and the proof upon the trial did not cure the defect in the complaint. It is quite evident from the discussion in that case that if it had appeared that the plaintiff had the grain, or could have furnished the grain to be delivered under the contract, so far as that question is concerned, it would have constituted a breach of the contract, even though no actual manual tender of the grain had been made. In the present case the complaint alleges the purchase, the delivery of the flour thereunder, the offer to deliver the flour undeliv-

ered under the order, and the refusal of the defendant to accept and receive the same. And the proof upon the trial established the firm's ability at any time to deliver the flour in accordance with the terms of the order, and also the defendant's refusal to authorize it. Under the authority of the above case, therefore, no other tender was necessary, as the failure to deliver was produced by the defendant's refusal to receive, which amounts in law to an excuse of tender, even though there be no express waiver. Ogden v. Marshall, 8 N. Y. 340; Lawrence v. Miller, 86 N. Y. 131; Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362; Hunter v. Wetsell, 84 N. Y. 549; Tiffany, Sales, p. 179, and cases cited. Under the facts of this case, therefore, tender of the flour was not an essential requisite to the maintenance of the action, as the defendant by his act prevented its being done, and he is therefore alone responsible for the failure.

This brings us to a consideration of the remaining question in the case. Was it necessary that the firm should have had in their possession the flour which the defendant was entitled to receive? We have seen that they were able to obtain it, the means they had of doing so, and that the defendant was familiar with the course of business by which they obtained it. It is laid down by Mr. Benjamin, in his work on Sales, that, where there has been a breach of an executory contract of sale, "if the postponement has taken place at the buyer's request he is estopped from denying that the seller was ready and willing to deliver within the contract time." Benj. Sales, p. 664. This doctrine is supported by the authority of the English cases. Hickman v. Haynes, L. R. 10 C. P. 598; Ogle v. Earl Vane, L. R. 3 Q. B. 272. We think that its doctrine is in all respects applicable to this case. At the time when the defendant should have taken the flour, the firm was able and ready to deliver it. That it was not then delivered was the fault of the defendant. As he prevented the delivery in accordance with the terms of the contract, we think that it is a salutary rule which holds him estopped from asserting that the firm did not go through all the technical forms of law in order to put him in default. In order to permit the defendant now to assert that the firm was not ready to perform, when his own act prevented it, would permit of his own breach of contract to constitute a defense, and he would advantage by his own wrong. The plaintiff, as assignee of the claim, properly brings the action.

The judgment should be reversed, and a new trial granted before another referee; costs to abide the event. All concur.