(41 App. Div. 30.)

FLETCHER et al. v. JACOB DOLD PACKING CO.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. SALE—FUTURE DELIVERY—VALIDITY.
    An executory contract for the future delivery of cattle, of which the seller is not then the owner, is not void as a wagering contract, or against public policy, where the parties intend an actual delivery and acceptance.

2. SAME—ACTION FOR BREACH—DAMAGES.
    In an action for breach of an executory contract for the delivery of 2,000 head of cattle, for which defendant was to pay a certain price per pound for their dressed carcasses, the evidence as to weight was based on the estimated weight of the dressed carcasses of about 800 cattle of the kind to be delivered, which plaintiff had purchased for delivery when defendant refused performance of the contract, and, as to the price per

pound, the evidence was conflicting. *Held* that, in estimating the damages, it was proper for the jury, from such evidence, to determine the probable weight of the dressed carcasses of the cattle to be delivered and the market price, and multiply the total number of pounds the carcasses produced by the difference between the contract price and the market price.

3. SAME—EVIDENCE—MARKET VALUE.

In an action for breach of an executory contract for the delivery of cattle for which defendant was to pay so much per pound, a letter from defendant to plaintiff about the time of the delivery, stating what he was then paying per pound for such cattle, is admissible in evidence as bearing on the market value.

4. SAME—COMPETENCY.

In an action for breach of contract for the delivery of cattle for canning, where defendant gives evidence that a car load of cattle shipped to him by plaintiff is not fit for canning, it is competent for plaintiff, such cattle not having been attended to on the way, to show what effect the absence of food and water would have on the appearance of cattle in transportation.

5. SAME—ABILITY TO PERFORM.

In an action for breach of contract for the delivery of 2,000 cattle, it is competent for plaintiff to show that there were several thousand cattle of the class to be delivered for sale which he could have purchased, as showing his ability to perform the contract had defendant not repudiated it.

6. SAME—CONTENTS OF LETTERS—IRRELEVANCY.

In an action for breach of contract, it is proper to refuse to allow a witness to testify as to the contents of a letter from defendant to plaintiff, where it is not shown that it contained anything relating to the contract.

Appeal from trial term.

Action by Loren A. Fletcher and another against the Jacob Dold Packing Company. From a judgment for plaintiffs and an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

In 1895 the plaintiffs were partners under the name of Fletcher Bros., and engaged at Champion, N. Y., in farming and dealing in live stock, and the defendant was a corporation engaged at Buffalo in packing and canning meat. In July the litigants, through correspondence, entered into an executory contract by which the plaintiffs agreed to sell and deliver at Buffalo, N. Y., in the autumn of that year, 2,000 cows known as "canners," for which the defendant agreed to pay 2½ cents per pound for the dressed carcasses and the market value of the hides. The cows were to be delivered alive to the defendant, which was to slaughter them for the offal. When the contract was entered into the plaintiffs were not the owners of the cows to be delivered, but between the date of the contract and September 19, 1895, they purchased, for the purpose of performing their contract, 863 cows known as "canners." On the date last mentioned, the defendant wrote the plaintiffs that it was not buying any more canners. On the 24th of that month the plaintiffs wrote the defendant, and inquired if it did not intend to carry out its contract. About October 5th the plaintiffs shipped a car load of cattle to Buffalo, and October 8th tendered them to the defendant, who denied the existence of the contract, and also asserted that a majority of the cows offered were not fit for canners, and refused to receive them. Thereupon the plaintiffs ceased purchasing, and sold the 863 cows on hand, and brought this action to recover damages for the failure of the defendant to perform its contract.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

L. L. Babcock, for appellant.
Watson Rogers, for respondents.

FOLLETT, J. The defendant does not assert that the contract entered into between the litigants for the future delivery of 2,000 unidentified cows was not intended by the parties to be performed by delivery on the part of the vendors, and by acceptance on the part of the vendee, or, in other words, it is not asserted that it was a wager on the future price of cows; and, in the absence of such a defense, the mere fact that when this executory contract was entered into the plaintiffs owned no cows of the kind which they contracted thereafter to deliver does not render the agreement void as a wager contract, nor as against public policy. Hibblewhite v. McMorine, 5 Mees. & W. 462; Mortimer v. McCallan, 6 Mees. & W. 58, 7 Mees. & W. 20, affirmed in 9 Mees. & W. 636; Stanton v. Small, 3 Sandf. 230; Bigelow v. Benedict, 70 N. Y. 202; Duryea v. Bonnell, 18 App. Div. 150, 45 N. Y. Supp. 435; Benj. Sales (Corbin's Ed.) §§ 82, 528 et seq., and cases cited. The existence of an executory contract for the sale and purchase of 2,000 cows was established by the evidence and conceded by the defendant, and it was also established that the defendant refused to perform the contract on its part. Whether the car load of cows tendered October 8, 1895, was the kind called for by the contract, and whether the plaintiffs were able to perform the contract, were left as questions of fact to the jury, and were found for the plaintiffs. It is not contended that the decision of these issues was influenced by erroneous rulings admitting or excluding evidence, or by erroneous instructions, and the only exceptions which are sought to be sustained are those relating to the question of damages.

From the nature of the contract, and the manner of its breach, the amount of damages sustained by the plaintiffs was incapable of being mathematically demonstrated, nor was it possible to ascertain the amount as definitely as in actions for the breach of contracts for the sale of identified chattels, or articles of which there are others of the same kind and of equal value for sale generally in the market, like shares of stock of a corporation, or barrels of flour of a particular brand, or bushels of grain of a specified kind and quality,—articles known as "fungibles." The contract was not for a specified number of pounds of beef fit for canning, at $2\frac{1}{2}$ cents per pound, but it was for such an amount as could be obtained from 2,000 cows fit for canning purposes. It could not be known how much the carcasses would weigh before the animals were killed, and, if all the animals had been purchased, the number of pounds which they would produce could, in advance of their being slaughtered, only be estimated. Only 863 cows had been purchased when the defendant refused, by postal card, to perform its contract. The persons who purchased the cows estimated the weight of their dressed carcasses at 325 to 375 pounds. In case the weight of the dressed carcasses would average 300 pounds per cow, the total weight of the 2,000 carcasses would be 600,000 pounds, and the loss of $8\frac{1}{2}$ mills per pound would equal $5,100, the amount of the verdict; in case the weight of the dressed carcasses would average 325 pounds each, the total weight would be 650,000 pounds, and the loss of 8 mills per pound would exceed by $100 the verdict for damages; and, in case the weight of the dressed carcasses would average 350 pounds

each, the total weight would be 700,000, and the verdict would represent a loss of a little more than 7 mills per pound. The damages awarded equal $2.55 per cow. The court instructed the jury that they should, from the evidence, arrive at the probable weight of the dressed carcasses of 2,000 cows of the quality known as "canners," and then determine the market value of such carcasses by the pound at Buffalo, and the difference between the contract price and the market price, multiplied by the number of pounds that 2,000 cows, fit for canners, would produce, would be the damages sustained. The evidence as to the market value of the canners in Buffalo in the autumn of 1895 was conflicting, varying from $1\frac{1}{2}$ to 3 cents per pound.

The defendant had the only canning factory in Buffalo, and was the only purchaser in that city of cows graded as canners. One of the plaintiffs testified that October 8, 1895, when he tendered the car load of cows on the contract, defendant's general manager told him that the defendant was paying but $1\frac{1}{4}$ cents per pound for canners. The defendant's general manager, though sworn as a witness, did not deny that he made this statement, though he did testify that canners were worth from $2\frac{1}{2}$ to 3 cents per pound in the autumn of 1895 at Buffalo. August 3, 1895, the defendant's general manager wrote that the price of canners was but 2 cents per pound. This was substantially the evidence of the plaintiffs in respect to the market price of canners at Buffalo in the autumn of 1895. On the other hand, the defendant's witnesses testified that the price of canners was from $2\frac{1}{2}$ to 3 cents per pound in the autumn of 1895, at Buffalo.

It seems incredible that the defendant should have absolutely refused to receive canners under the contract at $2\frac{1}{2}$ cents per pound in case they were worth that price or more in the Buffalo market. Under the evidence, the market value of canners per pound at Buffalo, in the autumn of 1895, was a fair question of fact for the jury, and, while this court cannot know the price per pound fixed by the jury as the market value, yet it cannot say, as a matter of law, that the price fixed was not supported by the evidence.

It is very clear that the weight of the carcasses of 2,000 dressed cows, fit for canners, in advance of their being killed, could not be definitely known, nor could their weight be very accurately known, if the cows had been purchased, and afterwards examined by experts. It is not suggested by the learned counsel for the appellant that any more definite rule could have been laid down for ascertaining the damages, but the contention seems to be that, when damages are incapable of being ascertained with certainty, the witnesses may not be allowed to estimate, and the jury act on the estimate of, any of the elements which necessarily form a part of the problem, like weights, as in the present case. The evidence discloses that 863 cows were purchased in the county of Jefferson and near-by counties, and that it was the purpose of the plaintiffs to gather the whole 2,000 from those counties, which the evidence shows could have been easily done. I think it can hardly be held that the weight of discarded dairy cows, raised in the same section of the state, and of a quality known as "canners," will so widely vary in weight that a jury may not

be allowed, under evidence showing the average weight of 863 canners, to estimate the weight of 2,000 canners as a basis for reaching the amount of damages recoverable for the breach of a contract to purchase.

The defendant urges that receiving in evidence its letter of August 3, 1895, addressed to William A. York, stating that it was paying but 2 cents per pound for canners, was error. This was introduced solely for the purpose of showing that the market price of canners had fallen from $2\frac{1}{2}$ to 2 cents after the contract between the litigants was entered into. This letter was the defendant's own statement in respect to the price of such cows, and it was competent as bearing upon the question of the market value at the time. I am unable to find that any error was committed in the reception or exclusion of evidence bearing upon the question of the market value of canners in the autumn of 1895.

As before stated, the defendant gave evidence that the car load of cows tendered October 8, 1895, with the exception of five, was not fit for canning purposes. The evidence shows that these cows were loaded upon a car at Carthage on Saturday, reached Buffalo Monday morning, and were unloaded on Tuesday morning. One of defendant's witnesses testified that he thought that there was no opportunity for feeding or watering cattle between Carthage and Buffalo, but that there were opportunities for feeding and watering in defendant's yard at Buffalo, but whether this car load was fed or watered was unknown to the witness; that no charge was made for such service. The witness was then asked what effect it would have on a cow to go from Saturday until Tuesday without food and water. The answer was that she would look gaunt and empty. This evidence was objected to as improper and incompetent, and the objection overruled, and an exception taken. It was competent, as bearing upon the condition of the cows, to show what effect the absence of food and water from Saturday until Tuesday would have upon their appearance.

The exception taken to the ruling permitting the plaintiffs to prove that there were several thousand of the class of cattle known as "canners" for sale in the northern counties of this state in the summer and autumn of 1895 was not erroneous. This evidence was competent to show that the plaintiffs would have been able to have performed their contract, had it not been repudiated by the defendant.

Defendant's agent testified that at some time between July 10 and September 19, 1895, he wrote the plaintiffs a letter, which was deposited in defendant's mail box with its general mail. No evidence was given of its delivery at the post office or at a United States mail box. There was no evidence of the contents of this letter,—whether it related to the contract between the parties, or that it contained anything relevant to the litigation,—and the refusal to allow the witness to testify to the contents of this letter was not error. Some other exceptions are referred to on the appellant's brief, but they are not of sufficient importance to require consideration. I think the judgment and order should be affirmed, with costs. All concur.